OPINION OF THE COURT
 

 CIPARICK, J.
 

 In 1988, the law firm of White & Case dissolved and then re-formed without one of its partners, Evan R. Dawson. This appeal presents two questions arising from an accounting pursuant to Partnership Law § 74 of Dawson’s interest in White & Case: (i) whether the law firm possesses goodwill that can be distributed in an accounting proceeding; and (ii) whether the law firm’s unfunded pension plan is a liability of the firm. Based on the facts presented, we conclude that, for purposes of the White & Case partnership accounting, goodwill was not a distributable asset of the partnership and the pension payments were not a partnership liability.
 

 I.
 

 Plaintiff Evan R. Dawson was a partner at the Manhattan law firm of White & Case for nearly 20 years. Sometime before 1988, the firm commenced negotiations with Dawson to persuade him to withdraw as a partner. When the talks reached an impasse, White & Case voted to dissolve the partnership and re-form without Dawson, effective July 1,1988.
 

 Dawson commenced this action against the partnership in dissolution and successor firm, alleging he was wrongfully terminated. In an amended complaint, Dawson asserted causes of action for an accounting, interference with prospective economic advantage, breach of fiduciary duty, conversion, trespass, invasion of privacy, and breach of contract. Dawson moved by order to show cause for a preliminary injunction to prohibit White & Case from interfering with his office and files. White & Case cross-moved to dismiss the accounting cause of action, contending that article sixth of the partnership agreement provided a mechanism for the distribution of Dawson’s inter
 
 *669
 
 est, and further moved for summary judgment on two of the tort causes of action.
 

 Supreme Court, in granting Dawson’s motion in part and denying White & Case’s cross motion, enjoined White & Case from impeding Dawson’s access to his client files and ruled that summary judgment on the tort causes of action was premature. In addition, the court ordered an accounting pursuant to Partnership Law § 74, concluding that article sixth was not controlling with respect to Dawson’s financial entitlement because it dealt only with the voluntary withdrawal, death or retirement of a partner, not to a partner’s expulsion.
 

 After a hearing, the Special Referee valued the assets of White & Case, including the firm’s goodwill as an asset and excluding the present value of unfunded pension plan benefits as a liability of the dissolved firm. Supreme Court confirmed the report and entered judgment in Dawson’s favor. White & Case subsequently entered a partial satisfaction of judgment, reflecting payment to Dawson of the uncontested portion of the judgment, which consisted of Dawson’s capital account plus interest.
 

 The Appellate Division affirmed, concluding that the partnership possessed distributable goodwill
 
 (see, Dawson v White & Case,
 
 212 AD2d 385). The Court noted: "Indeed, that defendant’s remaining partners, after dissolving defendant in order to exclude plaintiff as a partner, immediately reconstituted themselves as a new firm using the same name, address, facilities and client list as the dissolved firm, evidences that defendant in fact had good will to distribute”
 
 (id.,
 
 at 385). The Court also affirmed the exclusion of the pension payments as a liability because "the pension payments were operating expenses for the successor firm contingent upon its profitability. The purported multi-million dollar liability never appeared in any of defendant’s financial statements and was never assessed against either defendant or any of its partners for accounting purposes”
 
 (id.,
 
 at 386). This Court granted White & Case’s motion for leave to appeal and, for the reasons that follow, we now modify.
 

 II.
 

 Before turning to the specific issues on appeal, it is useful to review certain elemental principles of partnership law. Foremost among these, indeed "at the heart of the partnership concept,” is "the principle that partners may choose with
 
 *670
 
 whom they wish to be associated.”
 
 (Gelder Med. Group v Webber,
 
 41 NY2d 680, 684). In recognition of this principle, we have held that a partnership agreement may contain a termination provision or some other mechanism by which to remove a partner
 
 (see, id.,
 
 at 683). Absent such a mechanism, however, the removal of a partner can be accomplished only through dissolution of the firm, defined as a "change in the relation of the partners caused by any partner ceasing to be associated in the carrying on * * * of the business” (Partnership Law § 60). The White & Case partnership agreement did not contain an express termination provision, and so, in order to remove Dawson, the partners voted to dissolve the firm and then to immediately re-form without him.
 
 [1]
 

 This act of dissolution conferred on Dawson the "right to an account of his interest * * * as against the * * * partnership continuing the business” (Partnership Law § 74;
 
 see,
 
 Partnership Law § 52). When, as in this case, the partnership business is continued after dissolution, the accounting is performed by computing the firm’s assets less its liabilities, with the balance hypothetically apportioned among the partners to fix the former partner’s share of the partnership
 
 (see,
 
 Partnership Law § 71 [c];
 
 see generally,
 
 2 Bromberg and Ribstein, Partnership § 7.13 [b], at 7:121). At issue on appeal is whether, in the White & Case partnership accounting, goodwill was properly included as an asset of the firm and the pension payments were properly disallowed as a partnership liability.
 

 A.
 

 The first issue is whether White & Case possessed goodwill that was capable of distribution upon dissolution. When applied to law firms, the term "goodwill” refers to the "ability to attract clients as [a] result of [the] firm’s name, location, or the reputation of [its] lawyers” (Black’s Law Dictionary 695 [6th ed]).
 
 [2]
 
 We conclude that the Special Referee erred in including
 
 *671
 
 goodwill as an asset of White & Case in the partnership accounting.
 

 Analysis begins with the statutory instruction that "[i]n settling accounts between the partners after dissolution, * * *
 
 subject to any agreement to the contrary
 
 * * * [t]he assets of the partnership” include the "partnership property” (Partnership Law § 71 [a] [I] [emphasis added]). By statute, then, the partners are free to exclude particular items from the class of distributable partnership property, and such an agreement will be enforced in an accounting proceeding. Thus, even if a given partnership might be said to possess goodwill, the courts will honor an agreement among partners — whether express or implied — that goodwill not be considered an asset of the firm
 
 (see, Matter of Brown,
 
 242 NY 1, 6-7). Elucidating this principle, Judge Cardozo explained:
 

 "Good will, when it exists as incidental to the business of a partnership, is presumptively an asset to be accounted for like any other by those who liquidate the business. * * * The course of dealing, however, can stamp it with a different quality. Partners may contract that good will, though it exist, shall not 'be considered as property or as an asset of the co-partnership’ * * *. The contract may 'be expressly made,’ or it may 'arise by implication, from other contracts and the atits and conduct of the parties’ ”
 
 (id.,
 
 at 6 [citations omitted]).
 

 In
 
 Brown,
 
 the issue was whether a brokerage company was obligated to account to a former partner for the company’s goodwill even though goodwill was not mentioned in the partnership agreement or in the company’s books, incoming members paid nothing for goodwill, and a recently retired partner did not receive compensation for goodwill. The Court concluded that the trier of fact might infer "from the course of dealing between the partners when new members came in and old ones went out that by tacit understanding there was to be no accounting for good will”
 
 (id.,
 
 at 7). The same conclusion was reached in the context of a law firm dissolution in the case of
 
 Siddall v Keating
 
 (8 AD2d 44,
 
 affd
 
 7 NY2d 846).
 

 
 *672
 
 The pertinent facts of this case are similar to those of
 
 Brown
 
 and Siddall: new White & Case partners never paid anything for goodwill; departing partners never received a payment for goodwill; and goodwill was not listed as an asset in the firm’s financial statements. Indeed, the partners’ intention not to credit goodwill is even more apparent in this case than in either
 
 Brown
 
 or
 
 Siddall.
 
 The White & Case partnership agreement contained the following provisions: "It is expressly understood and agreed that no consideration has been or is to be paid for the Firm name or any good will of the partnership, as such items are deemed to be of no value” (art fourth [c]); and "The computation of the amount with which a Former Partner shall be charged or credited * * * shall exclude any value for the good will of the partnership or the Firm name, as such items are deemed to be of no value” (art sixth [d]).
 

 Dawson attempts to avoid these provisions by claiming they are inapplicable. He contends that article fourth relates solely to White & Case’s 1978 "sale and purchase” arrangement by which the partners reallocated their partnership percentages and that article sixth only applies in the event of a partner’s withdrawal, retirement or death, not to this expulsion situation. We disagree and find that the partnership agreement reflects the binding written expression of the terms under which these partners assented to associate with each other and evinces their intention that goodwill be deemed "of no value.” Its provisions reinforce our holding that, for purposes of this partnership accounting, White & Case lacks distributable goodwill.
 

 We note that the holding in this case is based on the specific facts presented, and should not be construed as a prohibition against the valuation, in the appropriate case, of law firm goodwill
 
 (see, e.g., Harmon v Harmon,
 
 173 AD2d 98, 105-107 [value of goodwill includable in marital estate for purposes of equitable distribution award];
 
 cf., Burns v Burns,
 
 84 NY2d 369, 374-375 [for equitable distribution award, value of legal practice not limited to capital account]). In addition, the existence of law firm goodwill has been recognized in conjunction with the recent promulgation of Code of Professional Responsibility DR 2-111 (A), which authorizes the sale of "a law practice, including good will,” by a "lawyer retiring from a private practice of law, [or] a law firm one or more members of which are retiring from the private practice of law with the firm”
 
 (see,
 
 22 NYCRR 1200.15-a [a]).
 

 
 *673
 
 To the extent that dictum in
 
 Siddall
 
 stands for the proposition that a professional business, as a matter of law, cannot have any goodwill apart from the goodwill of its constituent members, we note that this rationale has been rejected by this Court in a different context
 
 (see, Spaulding v Benenati,
 
 57 NY2d 418, 422-424,
 
 supra
 
 [enforcing sale of dentistry practice goodwill];
 
 see generally,
 
 Pratt, Reilly and Schweihs, Valuing Small Businesses and Professional Practices, at 409-415 [2d ed]) and has been superseded by the economic realities of the contemporary practice of law, illustrated by attorney advertising, internationalization of law firms, and other professional developments
 
 (see, Spayd v Turner, Granzow & Hollenkamp,
 
 19 Ohio St 3d 55, 61-62, 482 NE2d 1232, 1237-1238). In short, the ethical constraints against the sale of a law practice’s goodwill by a practicing attorney no longer warrant a blanket prohibition against the valuation of law firm goodwill when those ethical concerns are absent.
 

 B.
 

 Lastly, we hold that the future pension payments pursuant to White & Case’s unfunded pension plan were properly disallowed as a partnership liability. White & Case never included the unfunded pension plan as a liability in the firm’s financial statements. In addition, under the terms of the partnership agreement, pension payments could be made only out of partnership profits and could not exceed 15% of profits. Based on these facts, we agree with the Appellate Division that the pension payments were not a liability of the firm in dissolution, but "were operating expenses for the successor firm contingent upon its profitability”
 
 (Dawson v White & Case, supra,
 
 212 AD2d, at 386).
 

 Accordingly, the judgment appealed from and order of the Appellate Division brought up for review should be modified, without costs, and the case remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.
 

 Judges Simons, Titone, Bellacosa and Smith concur; Chief Judge Kaye and Judge Levine taking no part.
 

 Judgment appealed from and order of the Appellate Division brought up for review modified, etc.
 

 [1]
 

 . While partners are statutorily empowered to dissolve the partnership at any time (see, Partnership Law § 62 [2]), wrongfully dissolving partners may be liable to the expelled partner for breach of the partnership agreement when the partnership is not at will (see, Partnership Law § 69 [2];
 
 Napoli v Domnitch,
 
 18 AD2d 707, 708,
 
 affd
 
 14 NY2d 508). Whether such a breach occurred in this case is not raised on appeal.
 

 [2]
 

 . The term "goodwill” represents an elusive concept, but is broadly defined as "the advantage or benefit, which is acquired by an establishment, beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement,
 
 *671
 
 which it receives from constant or habitual customers, on account of its local position, or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices” (Story, Partnership § 99, at 170, quoted in
 
 Spaulding v Benenati,
 
 57 NY2d 418, 424, n 3).