**Dr. Guillermo SALINAS and Dr. Abel E. Salazar, Petitioners,**

v.

**Dr. S.A. RAFATI and wife Zena Rafati, Respondents.**

No. 95–0342.

Supreme Court of Texas.

Argued April 16, 1996.

Decided June 27, 1997.

R. Laurence Macon, James P. Robinson, III, Carlos D. Castillon, San Antonio, for Petitioners.

Oscar J. Pena, Laredo, for Respondents.

OWEN, Justice, delivered the opinion for a unanimous Court.

In this case, we consider whether an award of $1,428,000 to a physician for his interest in a professional partnership upon dissolution is supported by any evidence and whether the intangible assets of the dissolved partnership include the goodwill and individual earning capacities of the former partners. We conclude that goodwill attributable to individual partners is not an asset subject to division upon dissolution and that the evidence does not support the jury's award. Accordingly,

we reverse the judgment of the court of appeals in part and remand this case to the trial court for further proceedings.

I

Three radiologists, Drs. S.A. Rafati, Guillermo Salinas, and Abel E. Salazar, were the general partners of Radiology Associates located in Laredo, Texas. Their written partnership agreement addressed the death or withdrawal of a partner and included a noncompetition provision that applied to a withdrawing partner, but the agreement did not specify the duration of the partnership, nor did it address dissolution. The partnership enjoyed considerable financial success for a number of years, but over time the relationship among the three physicians deteriorated. Eventually, there were discussions about Rafati's possible withdrawal, but agreement could not be reached. Ultimately, Salinas notified Rafati by letter that Salinas was dissolving the partnership by his "express will."

At the time of dissolution, the partnership's assets consisted of accounts receivable, cash on hand, office furniture and equipment, utility deposits, and a leased office that was used only for billing. The partnership employed one radiologist on a fixed-salary basis and had several other employees who were highly skilled, although they were not physicians. The partnership had also enjoyed the benefits of a contract between Salinas and Mercy Hospital under which Salinas was the director of the radiology department. The contract permitted his partners and associates to perform the work of the radiology department if the written approval of the Hospital were obtained. The parties dispute whether this contract was personal to Salinas or a partnership asset. The Hospital owned all the medical equipment used by the partners in the practice of radiology, and the physicians saw their patients at the Hospital.

After dissolution of the partnership, the accounts receivable and cash on hand were divided without dispute. However, Salinas and Salazar then formed a new partnership called Associates in Diagnostic Radiology in which Rafati was not included. The new partnership continued the practice of radiology using the same office space and employees as the former partnership, and the contract between Salinas and Mercy Hospital continued in effect.

Rafati and his wife sued Salinas and Salazar alleging breach of fiduciary duty and wrongful dissolution. They further alleged that Rafati had not been fully paid for his share of the partnership, which they contended consisted of more than just the tangible assets and accounts receivable. At trial, the Rafatis' expert placed the value of the partnership between $756,821 and $2,940,000, which was derived by predicting what the partnership's future income would have been. The defendants' expert valued the partnership at approximately $405,000, which was based on the value of tangible assets and approximately $500,000 in accounts receivable, less the cost of collection and partnership liabilities. As already noted, however, the accounts receivable had been divided without dispute upon dissolution.

The jury found that Salinas and Salazar had breached their fiduciary duty to Rafati and had wrongfully dissolved the partnership. Damages were assessed at $400,000 for breach of fiduciary duty, $1,000,000 for wrongful dissolution, and $20,000 in attorneys' fees in connection with the wrongful dissolution claim. The jury also found that Rafati was owed $8,000 for cash advances made to Salazar. Finally, in response to Questions 7 and 8, the jury found that Rafati did not receive payment in full for his interest in the partnership after dissolution and awarded the Rafatis $714,000 from each defendant, for a total of $1,428,000 as the value of Rafati's one-third partnership interest.[1]

1. Questions 7 and 8, with the jury's answers, were as follows:
QUESTION NO. 7
Did the plaintiff receive payment in full for his partnership interest in Radiology Associates after its dissolution?
Answer Yes or No.

Answer: No
QUESTION NO. 8
What sum of money, if any, should Dr. Salinas and Dr. Salazar pay to Dr. Rafati for Dr. Rafati's partnership interest in Radiology Associates after deducting what Dr. Rafati has already received for such partnership interest?

Salinas and Salazar moved to set aside the findings on wrongful dissolution and breach of fiduciary duty, and all parties filed motions in connection with Questions 7 and 8. Salinas and Salazar moved to disregard the answers to Questions 7 and 8, arguing that under the Texas Uniform Partnership Act (TUPA), Tex.Rev.Civ. Stat. art. 6123b, § 38(1), Rafati's interest consisted only of his one-third share of the physical assets of the partnership and that there was no evidence to support the jury's answer to the valuation issue. The jury's answers to these issues presented a problem for the Rafatis even though the findings were very favorable. The jury's award reflected a partnership value of at least $4,284,000, more than twice the amount alleged in the Rafatis' pleadings. The Rafatis moved to amend their pleadings and, in another motion, sought leave to conform the pleadings to the jury's verdict and for judgment on that verdict. At the hearing on the parties' competing motions, the trial court granted the motion of Salinas and Salazar to disregard the jury's findings in Questions 7 and 8, but then rendered judgment for the Rafatis in accordance with the remainder of the verdict. All parties appealed.

The court of appeals held that there was no wrongful dissolution or breach of fiduciary duty as a matter of law and rendered judgment that the Rafatis take nothing regarding those claims. 948 S.W.2d 286, 287. The Rafatis have not sought review of that determination in this Court. The court of appeals also held that some evidence supported the jury's award of $714,000 from each defendant for Rafati's interest in the partnership. Accordingly, the court of appeals held that the trial court should have allowed the Rafatis to amend their pleadings to conform to the verdict, and the court of appeals modified the judgment to award the Rafatis the amount that the jury found in response to Questions 7 and 8. *Id.* at 287. Salinas and Salazar seek review of that judgment.

II

Salinas and Salazar assert at the outset that the court of appeals should not have

Answer in dollars and cents, if any, for each defendant.

rendered judgment on the jury's answers to Questions 7 and 8 because the Rafatis failed to preserve error. Salinas and Salazar contend that the Rafatis never presented their motion to amend or their motion for judgment to the trial court as required by Tex. R.App. P. 52(a) and that the Rafatis failed to obtain rulings in contravention of that rule. The record reflects otherwise.

▪ In granting the motion of Salinas and Salazar to disregard the jury findings in Questions 7 and 8, the trial court automatically denied the Rafatis' motion for judgment on those findings and their motions to amend and to conform the pleadings to the verdict. In addition, the trial court's order granting the motion of Salinas and Salazar to disregard the answers to Questions 7 and 8 specifically notes the Rafatis' objection. The Rafatis preserved any error.

Salinas and Salazar also argue that the court of appeals erred in reinstating the jury's verdict because the trial court properly disregarded the jury's answers to Questions 7 and 8 as immaterial. They contend that the damages found for wrongful dissolution, breach of fiduciary duty, and payments for cash advances were designed to compensate the Rafatis for Dr. Rafati's partnership interest. Hence, they argue, the answers to Questions 7 and 8 regarding the value of Rafati's partnership interest were duplicative and immaterial. Salinas and Salazar further contend that any error committed by the trial court in denying the Rafatis' motion to amend and motion for judgment on the verdict is harmless since the trial court properly disregarded the answers to Questions 7 and 8.

▪ A jury finding is immaterial only if the question should not have been submitted or if the question, though properly submitted, was rendered immaterial by other findings. *Spencer v. Eagle Star Ins. Co. of Am.,* 876 S.W.2d 154, 157 (Tex.1994) (citing *C. & R. Transport, Inc. v. Campbell,* 406 S.W.2d 191, 194 (Tex.1966)). Even assuming that the various damage awards were duplicative of the findings in Questions 7 and 8, an issue

A. Dr. Salinas   $714,000
B. Dr. Salazar   $714,000

we do not reach, the court of appeals has reversed the trial court's award of damages for wrongful dissolution and breach of fiduciary duty. The Rafatis have not sought review of that determination in this Court, and it is now final. Thus, the answers to the other damage issues cannot render the answers to Questions 7 and 8 immaterial, since the latter findings are the only remaining basis for recovery by the Rafatis.

It was proper for the court of appeals to reach the underlying merits of this dispute, to which we now turn.

## III

### A

Although in this Court neither party makes any reference, by citation or otherwise, to the statutes governing partnerships, we note that the dissolution of the partnership between Rafati, Salinas, and Salazar is governed by the Texas Uniform Partnership Act (TUPA). TEX.REV.CIV. STAT. art. 6132b, § 38(1). The more recently enacted Texas Revised Partnership Act (TRPA), TEX.REV. CIV. STAT. art. 6132b–1.01 to –10.04, applies to partnerships formed on or after January 1, 1994 and to those partnerships formed before that date that elect to be governed by the new act. *Id.* art. 6132b–10.03(a). The Rafati, Salinas, Salazar partnership was formed in 1987, and they made no election under TRPA.

The dissolution of a partnership that is not in contravention of the partnership agreement is governed by TEX.REV.CIV. STAT. art. 6132b, § 38(1).[2] Partners may by agreement provide for a different distribution upon dissolution. *Id.* However, the only issue presented to us regarding dissolution is whether there is some evidence to support the jury's valuation of this dissolved professional partnership. The principal contention of Salinas

and Salazar in this Court is that the ability of the former partners to earn income in the practice of medicine is not evidence of the value of the dissolved partnership.

■ The jury found that Salinas and Salazar should each pay the Rafatis the amount of $714,000, for a total of $1,428,000 for Rafati's one-third interest in the partnership. This means that the jury valued the partnership as a whole at $4,284,000. There was no evidence from which the jury could find anything approaching this amount. The expert witness called by the Rafatis valued the entire partnership at between $756,821 and $2,940,000. There was no other evidence from which the jury could have concluded that the partnership was worth $4,284,000. A jury must have an evidentiary basis for its findings. *See Texarkana Mem'l Hosp., Inc. v. Murdock,* 946 S.W.2d 836, 838 (Tex.1997). Accordingly, the trial court did not err in disregarding the jury's findings in Questions 7 and 8, and the court of appeals erroneously set aside the trial court's determination. *See* TEX.R. CIV. P. 301.

On this basis alone, we must reverse the judgment of the court of appeals. Whether the Rafatis are entitled to a new trial turns on whether some evidence supports the jury's finding that Rafati was not fully compensated for his interest in the partnership. Under the Rafatis' theory of the case, the future earning capacities of former partners can be considered in valuing a professional partnership upon dissolution. The Rafatis offered evidence under this theory and would be entitled to a remand if this were a proper basis for damages. *See Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 817 (Tex.1997). For reasons we discuss below, we conclude that under the facts of this case, the earning capacity of the former part-

---

**2.** The statute provides in pertinent part:
**Art. 6132b, § 38. Rights of Partners to Application of Partnership Property**
Sec. 38. (1) When dissolution is caused in any way, except in contravention of the partnership agreement, each partner, as against his copartners and all persons claiming through them in respect of their interests in the partnership, unless otherwise agreed, may have the partnership property applied to discharge its liabilities,

and the surplus applied to pay in cash the net amount owing to the respective partners. But if dissolution is caused by expulsion of a partner, bona fide under the partnership agreement and if the expelled partner is discharged from all partnership liabilities, either by payment or agreement under Section 36(2), he shall receive in cash only the net amount due him from the partnership.

ners is personal to each of them and is not a partnership asset divisible upon dissolution.

## B

The dissolution of this professional partnership was not wrongful, and the operation of the partnership as a business ceased. Salinas and Salazar formed a new partnership under a new name. There is no contention nor is there any evidence that the name of the former partnership had goodwill separate and apart from the personal talents and abilities of each of the partners or that any partner had the right or the desire to form a new partnership using the name of the dissolved partnership.

■ Rather, the Rafatis contend that the value of the dissolved partnership should include the ability the partnership would have had to produce income in the future. Although the Rafatis' expert purported to remove any personal goodwill from his valuation of the partnership, he testified unequivocally that his valuation is based on what Salinas and Salazar could earn over time if they and their employees continued the practice of radiology in Laredo in the same manner as they had done in the past.

Salinas and Salazar contend, and we agree, that the Rafatis treated the partnership upon dissolution as if it were a salable, going concern, when by definition, the partnership ceased to exist after the period of time necessary to wind up outstanding matters. *See* TEX.REV.CIV. STAT. art. 6132b, § 30 (providing that upon dissolution, the partnership continues until the "winding up of partnership affairs is completed"). The value that the Rafatis attributed to the partnership was largely based on the talents and abilities of the individual physicians and their ability to generate income in the future. To the extent that the valuation of the dissolved partnership was based on the goodwill attributable to the personal skills and talents of the former partners, it improperly took into account intangibles that were not partnership assets.

Our Court considered the rights of partners upon dissolution in *Rice v. Angell*, 73 Tex. 350, 11 S.W. 338 (1889). Although that decision is of considerable age, its reasoning remains sound today. The Court in *Rice* very thoughtfully explored the boundaries of goodwill when a partnership is dissolved and one or more of its former members continues to engage in the same type of business. The dispute in *Rice* was between two men who had been partners in an insurance agency. The plaintiff had initially purchased an interest in the partnership, but after several years, his colleague dissolved their relationship. *Id.* 11 S.W. at 338–39. This Court recognized in *Rice* and later in *Nail v. Nail*, 486 S.W.2d 761 (Tex.1972), that a distinction must be drawn between the goodwill that attaches to a professional person because of confidence in the skill and ability of the individual and the goodwill of a trade or business that arises from its location or its well-established and well-recognized name. *Nail*, 486 S.W.2d at 763–64; *Rice*, 11 S.W. at 339–40. When a trading partnership dissolves, one partner may secure the right to continue the business at "the old stand." *Rice*, 11 S.W. at 340. The probability that customers would resort to the old place of business may be deemed a valuable right. *Id.*

We contrasted that kind of arrangement, however, with the dissolved partnership in *Rice*. In *Rice*, patronage was not affected by the location of the office, and the success of either individual in controlling the business they once shared depended on the personal capacity of each of the former partners to attract and hold the representation of insurance companies and clients. *Id.* We observed that the agency relationships that had existed with a number of insurance companies ceased upon dissolution of the partnership and that each of the former partners would have the same opportunity as the other to compete for the right to represent insurance companies. *Id.* The *Rice* decision was careful to distinguish situations in which the partnership had a generally recognized name, such as the "Galveston Insurance Agency," that would lead patrons to do business with any person or firm using that name, from a partnership name that was not generally recognized, composed of the names of the former partners. *Id.*

Subsequently, in *Nail,* we recognized that although goodwill can exist as "an incident of a continuing business having locality or name," the distinction has been drawn that "professional good will is not so much fixed or as localized as the good will of a trade, and attaches to the person of the professional man or woman as a result of confidence in his or her skill and ability." *Nail,* 486 S.W.2d at 763. Nevertheless, there may be goodwill in a professional partnership that is separate from the skills or attributes of an individual member. *Id.* at 764. A case illustrating such a situation is *Geesbreght v. Geesbreght,* 570 S.W.2d 427 (Tex.Civ.App.—Fort Worth 1978, writ dism'd), in which a physician owned shares in a professional corporation that provided emergency-room physicians to hospitals. The corporation had contracts with several hospitals and employed about fifty to one hundred physicians on a part-time basis and ten on a full-time basis to satisfy those contracts. The court of appeals drew a distinction between the goodwill built up by the physician personally at the hospital at which he practiced and the corporation's goodwill arising from the opportunity under its contracts to provide service to other hospitals at which he did not practice. *Id.* The court of appeals reasoned that if the physician and other shareholders sold the corporation, the right to do business as that corporation would continue and the goodwill built up by the company would continue for a time. *Id.* at 435–36.

The ultimate holding in *Geesbreght* was that the corporation had goodwill separate and apart from that of the physician as a professional practitioner. The goodwill of the company, apart from the goodwill associated with the physician himself, could be considered in dividing the community estate upon divorce. *Id.* at 436; *see also Taormina v. Culicchia,* 355 S.W.2d 569, 573–74 (Tex. Civ.App.—El Paso 1962, writ ref'd n.r.e.) (holding that when former partners continued business in same place with same name and continued use of trademarks and brands in canning business after dissolution of partnership, goodwill existed separate and apart from individual partners); *Dawson v. White & Case,* 88 N.Y.2d 666, 649 N.Y.S.2d 364, 367–368, 672 N.E.2d 589, 592–93 (1996) (hold-ing that law firm's partnership agreement and history of operations precluded recovery of goodwill upon dissolution, but recognizing that blanket prohibition against goodwill of a law firm has been superseded by the economic realities of the contemporary practice of law). *Geesbreght* and *Nail* illustrate the considerations involved in determining whether an estate includes goodwill. Neither establishes an absolute rule.

This is not a case in which the partnership at issue is an ongoing enterprise. The issue is whether there was goodwill attributable to Rafati's former partnership separate and apart from the skills, personalities, and attributes of the professionals themselves and whether such goodwill survived the dissolution. The Rafatis are claiming that an asset of the dissolved partnership, namely goodwill, has been requisitioned by the former partners and is being used in their new partnership.

The Rafatis' expert candidly conceded that the skills of the physicians were the primary asset of the business. Even had he not done so, it is evident that a valuation based on the earnings of the physicians improperly takes into account goodwill that is attributable only to the professionals personally. Rafati's former partnership is indistinguishable from the one at issue in *Rice.* Each of the former partners now has the opportunity to compete for the partnership's former business. Indeed, Rafati opened a radiology practice at a new location in competition with Salinas and Salazar. Rafati's true complaint is that he has not been as successful in that competition as he would have liked.

The Rafatis' attempt to harness the future earning capacity of Salinas and Salazar highlights the incongruity of a rule of law that would allow a partner to recover a share of a former partner's ability to generate income under the guise of goodwill. If the Rafatis' theory were correct, Salinas and Salazar could also seek to recover from Rafati the value of the goodwill he took to his new practice. There would be offsetting claims, with the more successful former partners compensating the less successful ones indefinitely. This would defeat the very purpose

of a dissolution of a partnership, which is to sever the ties that bind partners and to terminate the sharing of profits. If we were to accept the Rafatis' arguments, we would be undercutting the right of partners to dissolve their partnership. We would also be engrafting onto the partnership agreement a postdissolution sharing arrangement based on the personal earning capacities of other partners.

The Rafatis point to the fact that Salinas and Salazar continued to do business in the same location, with the same employees, and under the same contract with Mercy Hospital. However, the evidence showed that the office was used only for billing purposes; the doctors performed their services at the Hospital. There was no evidence that any business was directed to the former partnership by virtue of the location of the billing office. The lease covering the office building might have a value divisible on dissolution as a tangible asset, but no evidence was presented to establish its value. All the employees at issue were at-will employees. Upon termination of Radiology Associates, Rafati had the same opportunity to hire them as did the new partnership. In fact, the testimony indicated that he spoke with several of them about that possibility. The employees were not assets of the partnership.

■ The remaining point of contention is the contract with Mercy Hospital. The Hospital had discussions with Rafati and Salinas that led to the execution of the contract that is at issue. The Hospital sought a single physician to assume the responsibilities of director of the radiology department and would not agree to a contract other than with an individual physician. The Hospital was willing to contract with either Salinas or Rafati, who were partners at that time, but not both. Rafati and Salinas agreed that it should be Salinas since Rafati had no interest in performing administrative functions, which were required by the contract.

The written agreement with the Hospital provided in part:

The Director shall be present in the Hospital and shall be available when needed for consultation ... and for performing and reporting radiological examinations as re-quired by patient volume and pre-established schedules and emergency situations. If the approval of the Hospital is obtained in writing, the work of the Radiologist may be done in part [by] such assistant radiologists as may be duly appointed to the medical staff by the Hospital and employed by the Director or associates or partners in practice with the Director who have been appointed to the medical staff. Nothing contained in this paragraph or in this agreement shall be construed to permit assignment by the Director of any rights under this agreement, and such assignment is expressly prohibited.

Thus, the contract provided that the Hospital could allow radiologists who were employees, associates, or partners of Salinas to assist him. However, Salinas could not assign any rights under the contract to anyone, including his partners. Salinas did testify, however, that although the contract was with him and him alone, he in fact had shared the benefits of the contract with his partners.

Although Rafati had in the past benefitted from the contract with Mercy Hospital as a partner of Salinas, the provisions of the contract and the facts surrounding its execution lead to the conclusion that it was personal to Salinas and was not a partnership asset. If Salinas had died while the partnership with Rafati was in effect, neither Rafati nor Salazar would have had the right to insist that the Hospital allow one of them to assume the rights and responsibilities of Salinas. The contract with the Hospital would have terminated on the death of Salinas. Or, if the partnership agreement had provided for a definite term and at the end of that term Salinas had chosen not to renew or extend the agreement, neither Salazar nor Rafati would have had the right to assume all or part of the duties of Salinas under the contract or to require the Hospital to allow either of them to work in the radiology department.

Further, it has generally been recognized that the goodwill of a professional partnership cannot be the subject of an involuntary sale or transfer. See Nail, 486 S.W.2d at 763 (and authorities cited therein). Rafati could not compel Salinas to perform the contract to

satisfy partnership obligations, nor could the contract be sold to other physicians. Unlike tangible property that may be held in the name of one partner for the partnership, such as title to land, the contract between Salinas and Mercy Hospital was one for personal services to be rendered by Salinas. Given the nature of this contract, its value after dissolution should not be considered in determining Rafati's share of the partnership assets. *See Cofer v. Hearne,* 459 S.W.2d 877, 881 (Tex.Civ.App.—Austin 1970, writ ref'd n.r.e.) (holding that upon dissolution of partnership of attorneys, fees collected for work on cases prior to dissolution should be divided among former partners, but fees for work done after dissolution went to individual partner who performed the work).

This case must nevertheless be remanded to the trial court for further, limited proceedings. Salinas and Salazar admitted in their post-trial motions that Rafati never received his share of the value of the office furniture and equipment. They assert that this property has a value of $7,500 and that Rafati is entitled to be paid $2,500, his one-third of the value. Since it is undisputed that Rafati did not receive his share of the value of this partnership property, we remand the case for a determination of the amounts owed to Rafati for his share of these assets. On remand, the Rafatis would further be entitled to offer evidence of the value, if any, of the lease of office space that was held by the partnership, net of the lease obligations. Our disposition of the this case renders it unnecessary to consider the other points of error brought by Salinas and Salazar.

\* \* \* \* \*

The judgment of the court of appeals is reversed in part and this case is remanded to the trial court for further proceedings consistent with this opinion.