Motions for Rehearing Overruled; Affirmed as Modified; Opinion of
September 11, 2003, Withdrawn and Substitute Opinion filed April 22, 2004









Motions for Rehearing Overruled; Affirmed as Modified;
Opinion of September 11, 2003, Withdrawn and Substitute Opinion filed
April 22, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-00-01160-CV

____________

 

ROBERT S.
BENNETT, Appellant

 

V.

 

LES
COCHRAN, Appellee

 



 

On Appeal from the 165th District Court

Harris County, Texas

Trial Court Cause No. 99-15954

 



 

S U B S T I T U T E   O P I N I O N   O N  
R E M A N D

We overrule the motions for
rehearing filed by appellant Robert S. Bennett and by appellee Les
Cochran.  We withdraw the opinion issued
in this case on September 11, 2003, and we issue the following opinion in its
place.








In our original opinion, we
affirmed the trial court=s
judgment without addressing the merits, because appellant did not request the
entire reporter=s
record.  See Bennett v. Cochran,
92 S.W.3d 8, 9B10 (Tex. App.CHouston
[14th Dist.] 2001), rev=d, 96
S.W.3d 227, 228B30 (Tex.
2002).  The Texas Supreme Court reversed
this court=s judgment, holding that, under
the circumstances of this case and under Rule 34.6 of the Texas Rules of
Appellate Procedure, this court should review appellant=s issues
on appeal based on the partial reporter=s
record.  See Bennett v. Cochran,
96 S.W.3d 227, 228B30 (Tex.
2002).  On remand, we address the merits
of the case.

This appeal arises out of a
dispute between the two former partners of the law firm Bennett Cochran,
L.L.P.  Appellant Robert S. Bennett, the
defendant and counter-plaintiff in the court below, claims the trial court
erred in disregarding jury questions finding that appellee Les Cochran, the
plaintiff and counter-defendant in the court below, breached an agreement to
pay half of the expenses and overhead of Bennett Cochran, L.L.P.  Bennett also claims that the evidence is
legally insufficient to support the jury=s
affirmative finding as to Cochran=s
negligent-misrepresentation claim.  We
hold the trial court did not err in disregarding the jury=s
findings as to Cochran=s alleged
agreement; however, we also hold that there is no evidence to support the jury=s finding
on Cochran=s negligent-misrepresentation
claim.  Therefore, we modify the trial
court=s
judgment to delete the award of damages to Cochran based on his
negligent-misrepresentation claim, and, as modified, we affirm the trial court=s
judgment.

                              I. 
Factual and Procedural Background








Cochran and Bennett are both
lawyers.  In the spring of 1997, Cochran
contacted Bennett and the two had lunch together.  After discussions and correspondence, on July
15, 1997, they agreed to practice law together and formed Bennett Cochran,
L.L.P., a Texas limited liability partnership; however, the two lawyers never
entered into a written partnership agreement.[1]  Cochran made an initial capital contribution
of $50,000, and later made another capital contribution of $40,000.  In October of 1997, Cochran suffered a
stroke.  As a result of the stroke,
Cochran had a reduced work schedule for a time. 
On March 24, 1999, Bennett gave Cochran notice of his request
for a winding up of the partnership. 
Later that month, Cochran filed this suit against Bennett.

Cochran asserted various contract
and tort claims against Bennett, and Bennett filed a counterclaim asserting a
variety of claims against Cochran.  After
a jury trial, the jury found no liability on various claims by and between the
parties; however, the jury returned a verdict of liability and damages on some
of the claims, specifically finding the following: (1) Cochran justifiably
relied on negligent misrepresentations by Bennett that proximately caused
Cochran $50,000 in damages; (2) Bennett suffered $5,000 in damages as a result
of Cochran=s assault on him; (3) Cochran
agreed to pay half of all expenses and overhead of Bennett Cochran, L.L.P.; and
(4) Cochran=s breach of this agreement caused
Bennett $24,000 in damages.

The trial court entered judgment
on the jury=s findings as to Bennett=s assault
claim and Cochran=s
negligent-misrepresentation claim; however, the trial court granted Cochran=s motion
to disregard the jury findings relating to Bennett=s
breach-of-contract claim and granted a take-nothing judgment as to this claim.

                                                       II. 
Issues Presented

Bennett asserts the following
issues for appellate review:

1.         Is there legally sufficient evidence to
support the jury=s answers to questions
27(b), 28, 30 and 31, finding that Cochran failed to comply with an oral
partnership agreement under which he agreed to pay half of all expenses and
overhead of Bennett Cochran, L.L.P.?

2.         Is there legally sufficient evidence to
support the jury=s findings regarding
Bennett=s attorney=s fees in question 26?

3.         Is there legally sufficient evidence to support the jury=s
negligent-misrepresentation findings in question 13?








                                                   III. 
Standard of Review

All of
Bennett=s issues
involve a no-evidence analysis, in which we review the evidence in a light that tends to support the
disputed findings and disregard all evidence and inferences to the
contrary.  See Lee Lewis Constr., Inc.
v. Harrison, 70 S.W.3d 778, 782 (Tex. 2001).  If more than a scintilla of evidence exists,
it is legally sufficient.  Id.  More than a scintilla of evidence exists if
the evidence furnishes some reasonable basis for differing conclusions by
reasonable minds about a vital fact=s existence.  Id. at 782B83. 


                                                    IV. 
Issues and Analysis

A.        Is there any evidence Cochran agreed to
pay half of all expenses and overhead of Bennett Cochran, L.L.P.?

 

In his first issue, Bennett
challenges the trial court=s
granting of Cochran=s motion
to disregard the following findings of the jury: (1) Bennett and Cochran had an
oral partnership agreement; (2) Cochran agreed to pay half of all expenses and
overhead of Bennett Cochran, L.L.P.; (3) Cochran failed to comply with this
agreement; and (4) $24,000 would fairly and reasonably compensate Bennett for
damages resulting from this failure to comply. 
In his motion, Cochran asked the trial court to disregard these findings
because there was no evidence to support them and because the statute of frauds
operated to bar the enforcement of any such oral agreement by Cochran.  Without stating its reasons, the trial court
granted Cochran=s motion
to disregard the jury=s
findings and entered a take-nothing judgment against Bennett on Bennett=s
breach-of-contract claim.  Bennett
disputes both of the grounds asserted in Cochran=s motion
to disregard.








Bennett argues that the trial
court erroneously disregarded the jury=s finding
that Cochran orally agreed to pay half of all expenses and overhead of Bennett
Cochran, L.L.P. Bennett asserts this issue was determined as a matter of law
based on admissions in Cochran=s petition
and based on Cochran=s failure
to file a verified denial of the existence of a partnership in response to
Bennett=s
allegation of partnership in his counterclaim. 
Cochran admitted in his petition that he was Aa
participant in the law firm of Bennett Cochran L.L.P.@  Cochran admitted that there was no written
partnership agreement and that the agreement, if any, was oral.  In his counterclaim, Bennett alleged that
Cochran was a partner with Bennett in a limited liability partnership.  Cochran did not file a verified denial.             Presuming
for the sake of argument that Cochran=s failure
to file a verified denial of partnership established as a matter of law the
existence of a limited liability partnership, of which Cochran was a partner,
this would not undermine the trial court=s
disregarding of the jury finding that Cochran orally agreed to pay half of all
expenses and overhead of Bennett Cochran, L.L.P.  Subject to an exception that does not apply
to this case, a partner in a registered limited liability partnership is not
individually liable, directly or indirectly, for debts and obligations of the
registered limited liability partnership, unless that partner agrees to be
individually liable.  See Tex. Rev. Civ. Stat. art. 6132b-3.08(a)
(stating general rule of nonliability); Tex.
Rev. Civ. Stat. art. 6132b-1.03 (stating that, subject to exceptions not
applicable here, statutory partnership rules govern the relationship between
the partners and the partnership to the extent the partnership agreement does
not otherwise provide).  At trial,
Cochran admitted that he was a partner of a limited liability partnership, and
the evidence showed that the partnership was a registered limited liability
partnership.  Therefore, the issue is not
whether a limited liability partnership existed, but whether there is legally
sufficient evidence to support the jury=s finding
that Cochran orally agreed to pay half of all expenses and overhead of Bennett
Cochran, L.L.P.[2]








In support of his assertion that more than a scintilla of evidence
supports this jury finding, Bennett cites evidence relating to the existence of
Bennett Cochran, L.L.P.  However,
for the reasons just cited, this evidence is not on point.  Beyond this evidence, Bennett directs the
court to only two places in the record to support his argument.  First, Bennett points to Cochran=s
petition in which Cochran alleged that Bennett and he were each Aentitled
to fifty percent (50%) of the income and assets of Bennett Cochran L.L.P.,
after debts are paid and appropriate offsets.@  Even if this is a binding judicial admission,
it does not address whether Cochran agreed to be personally liable for any part
of the expenses and overhead of Bennett Cochran, L.L.P.; rather, in this
pleading, Cochran only states that his partnership interest is entitled to
share in any equity remaining after the partnership debts are paid.  Second, Bennett cites his testimony
concerning his understanding of the terms of the partnership:

Q.        What did you [Bennett] consider the
terms of the partnership at that point in terms of income and expenses?

A.        At that time we were certainly
functioning as fifty/fifty partners. And that was my understanding, fifty/fifty
as to everything, debt, expenses, lunches, whatever it was.  

 








Given the undisputed fact that Bennett and Cochran
were partners in a registered limited liability partnership, the above
testimony does not furnish
a reasonable basis for differing conclusions by reasonable minds as to whether
Cochran agreed to pay half of all expenses and overhead of Bennett Cochran,
L.L.P.  See Lee Lewis Constr., Inc., 70 S.W.3d at 782B83. 
This testimony shows that Bennett believed that Cochran and he were
partners and that they would be equally burdened by the debts and expenses of
the partnership.  Bennett did not testify
that Cochran agreed with Bennett=s
understanding, and, in another part of his testimony, Bennett indicated that
Cochran and he were not in agreement as to the terms of their limited liability
partnership.[3]  Furthermore, Bennett did not state that
Cochran and he would be personally liable for the expenses and overhead of the
partnership, as opposed to only having their partnership interests burdened
equally by these financial obligations.

In another part of his testimony, Bennett stated
that Cochran reached an agreement with regard to a formula concerning the risks
and rewards of the partnership.  Bennett
was then impeached with his prior deposition statement that Cochran and he did
not come to an agreement regarding a formula concerning the risks and rewards
for their partnership.[4]  In any event, Bennett never testified that
Cochran agreed to a formula that included an agreement by Cochran to be
personally liable for half of all expenses and overhead of Bennett Cochran,
L.L.P.  Cochran testified that Bennett
and he did not enter into a partnership agreement, but that they were partners
in Bennett Cochran, L.L.P.  Cochran
testified he believed that, under this arrangement, the two partners would split
evenly any profits and losses from Bennett Cochran, L.L.P. after the bills were
paid.   

Bennett has not cited, and we have not found, any
evidence in the record to support the jury=s finding
that Cochran orally agreed to pay half of all expenses and overhead of Bennett
Cochran, L.L.P.  Under the applicable
standard of review, we conclude that there is no evidence to support this
finding.  See Lee Lewis Constr., Inc., 70 S.W.3d at 782B83; Salinas v. Rafati, 948
S.W.2d 286, 289 (Tex. 1997). 
Therefore, Bennett=s
breach-of-contract claim fails as a matter of law, and the trial court did not
err in disregarding the jury=s answers
and rendering a take-nothing judgment against Bennett as to this claim.[5]  See
Salinas, 948 S.W.2d at 289. 
Accordingly, we overrule Bennett=s first
issue.








Bennett=s second issue complains only of the
trial court=s failure to award attorney=s fees as to his breach-of-contract
claim. Bennett cannot recover attorney=s fees under Chapter 38 of the Texas
Civil Practice and Remedies Code if he takes nothing on his contract claim. See
Tex. Civ. Prac. & Rem. Code ' 38.001; Grapevine Excavation,
Inc. v. Maryland Lloyds, 35 S.W.3d 1, 2 (Tex. 2000).  Therefore, we overrule Bennett=s second issue. 

B.        Is there any evidence to support the jury=s
negligent-misrepresentation finding?

 

In his third issue, Bennett asserts that there is
no evidence to support the jury=s finding
that Cochran justifiably relied on negligent misrepresentations Cochran claims
Bennett made to him.  In response,
Cochran cites five pages of testimony from the reporter=s record
and identifies three statements as misrepresentations that Bennett allegedly
made to him: (1) Bennett had a $250,000 line of credit; (2) Bennett, Krenek
& Hilder, L.L.P. was a viable law firm, with substantial cases on its
docket; and (3) Bennett=s Aformaldehyde
docket@
consisted of Agood cases that were worth a lot
of money.@

The elements of a claim for negligent
misrepresentation are:  (1) the defendant
makes a representation in the course of his business, or in a transaction in
which he has a pecuniary interest; (2) the defendant supplies Afalse
information@ for the guidance of others in
their business; (3) the defendant did not exercise reasonable care or
competence in obtaining or communicating the information; and (4) the plaintiff
suffers pecuniary loss by justifiably relying on the representation.  See Federal Land Bank Ass=n of
Tyler v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991).  The sort of Afalse
information@ contemplated in a
negligent-misrepresentation case is a misstatement of existing fact, not a
promise of future conduct.  See Allied
Vista, Inc. v. Holt, 987 S.W.2d 138, 141 (Tex. App.CHouston [14th Dist.] 1999,
pet. denied).








As to the first alleged misrepresentation, Cochran
testified that Bennett told him Bennett had a $250,000 line of credit and that
Bennett did not tell Cochran he had drawn on his line of credit.  We hold that there was no evidence that
Bennett made a misstatement of existing fact regarding his line of credit.  It is undisputed that Bennett had a $250,000
line of credit. Bennett=s bare
statement to this effect was true, and it was not a misstatement of existing
fact regarding how much Bennett had drawn on the line of credit.  Cochran never stated that he was unfamiliar
with how lines of credit work; in fact, he had his own line of credit.  There is no evidence that Bennett said he had
not drawn on his line of credit or that Bennett led Cochran to believe that the
full $250,000 was currently available. 
Therefore, we hold there is legally insufficient evidence that Bennett
supplied Cochran with false information in this regard.  See Allied Vista, Inc., 987 S.W.2d at
141.  Furthermore, Cochran never
testified that he relied on Bennett=s
statement that Bennett had a $250,000 line of credit.  After reviewing the record and applying the
appropriate standard of review, we conclude there is no evidence that Cochran justifiably
relied on any alleged representation in this regard.  See Lee Lewis Constr., Inc., 70 S.W.3d at 782B83; Bluebonnet Sav. Bank, F.S.B.
v. Grayridge Apartment Homes, Inc., 907 S.W.2d 904, 909 (Tex. App.CHouston [1st Dist.] 1995,
writ denied).  

As to the second alleged misrepresentation,
Cochran asserts Bennett represented to him that the law firm with which Bennett
was then affiliated C Bennett,
Krenek & Hilder, L.L.P. C was a
viable firm, with substantial cases.  The
only evidence Cochran cites to support this alleged misrepresentation is the
following testimony concerning Cochran=s
thoughts when he made his initial capital contribution in July of 1997: 

At that time I thought that we were merging into a viable law firm with
a substantial number of cases and with competent staff and I thought I was
merging in with a partner with whom I could work.

 








This testimony speaks
only to Cochran=s thoughts and beliefs; it does not address what caused
Cochran to have these thoughts or form these beliefs.  Reviewing the evidence in a light that tends
to support the jury=s findings and disregarding all evidence and inferences to
the contrary, this evidence
does not furnish a reasonable basis for differing conclusions by reasonable
minds as to whether Bennett stated to Cochran that Bennett,
Krenek & Hilder, L.L.P. was a viable firm, with substantial cases.  See Lee Lewis Constr., Inc., 70 S.W.3d
at 782B83.  We have not found any other evidence in the
record that would support this alleged misrepresentation.  Therefore, applying the applicable standard
of review, we find there is no evidence that Bennett represented to Cochran
that Bennett, Krenek & Hilder, L.L.P. was a viable firm, with substantial
cases.  See Lee Lewis Constr., Inc.,
70 S.W.3d at 782B83; Allied
Vista, Inc., 987 S.W.2d at 141 (holding that there was no evidence of a misstatement of
existing fact that would allow recovery for negligent misrepresentation).  








As to the third alleged misrepresentation, Cochran
asserts Bennett represented to him that Bennett=s Aformaldehyde
docket@
consisted of Agood cases that were worth a lot
of money.@ 
In support of this alleged misrepresentation, Cochran cites his
testimony that Eddie Krenek, then a partner in Bennett, Krenek & Hilder,
L.L.P., told Cochran, in Bennett=s
presence, that the firm=s Aformaldehyde
cases@ were Agreat
cases@ and that
Bennett and Cochran Awere
going to make a ton of money.@  While there is evidence that Krenek was an
agent of Bennett, Krenek & Hilder, L.L.P. at the time of these alleged
statements, Cochran has not asserted negligent misrepresentation against
Bennett, Krenek & Hilder, L.L.P. 
Cochran has asserted this claim only against Bennett in his individual
capacity.  There is no evidence in the
record to support a finding that Krenek was an agent of Bennett in his individual
capacity.  Though Cochran testified that
Bennett was present when Krenek made these statements and that Bennett did not
correct Krenek, Cochran has not cited, and we have not found, authority that
would impose negligent-misrepresentation liability on Bennett for his failure
to correct Krenek in these circumstances.[6]  Under section 551 of the Restatement (Second)
of Torts, a party to a business transaction has a duty to disclose certain
matters in four situations that do not require the existence of a fiduciary
relationship.  See Restatement (Second) of Torts ' 551
(1977).  Even if section 551 of the
Restatement (Second) of Torts applied under Texas law and even if this section
applied to negligent misrepresentation, it would not impose a duty to disclose
on Bennett in these circumstances.  See
Bradford v. Vento, 48 S.W.3d 749, 755B56 (Tex.
2001) (noting that Texas Supreme Court has not adopted section 551 of the
Restatement (Second) of Torts and holding that, even if the court were to adopt
it, there was legally insufficient evidence to support fraud liability); Allied
Vista, Inc., 987 S.W.2d at 141 (stating that misstatement of existing fact is required for
negligent-misrepresentation liability); Restatement (Second) of Torts ' 551. Therefore,
we conclude that the evidence cited by Cochran is not legally sufficient
evidence of the third alleged misrepresentation.

The record also contains the following other
testimony from Cochran regarding Bennett=s
statements about the Aformaldehyde
cases@:

Q.        Okay now, what did [Bennett] tell you about his formaldehyde
cases or his formaldehyde docket?

A.        He told me that he had made a lot of money in the past on the
formaldehyde cases and he told me that he had a number of cases that were
worked [sic] on the firm.  I think he
told me that Eddie Krenek was the attorney who was supposedly handled [sic] the
cases.

Q.        Did he tell you how good those cases were?

A.        He told me that there was [sic] good cases and there was a
lot of money to be made on the formaldehyde cases.

Q.        Did he tell you anything else about the formaldehyde cases?

A.        He did not tell me C

Q.        Let=s talk about what he did
tell you and we=ll go back to what he did
not?

A.        That=s all I
recall right now.








Cochran=s
testimony indicates that Bennett made these alleged statements to him after May
27, 1997, and before July 8, 1997. 
Cochran asserts that, in April of 1997, Bennett=s firm lost
a Aformaldehyde
trial@ due to
federal preemption, which meant that the Aformaldehyde
cases@ were
worth much less than the firm previously had thought.  Cochran has not cited, and we have not found,
any evidence in the record showing that this trial was lost in April of
1997.  One document indicates that this
trial occurred sometime in June of 1997, and another document suggests that the
trial ended sometime before June 23, 1997. 
Therefore, the evidence in the record indicates that this trial ended in
June of 1997, not in April of 1997.

Even if we were to presume that Bennett made these
statements to Cochran after the trial in question had ended, we conclude that
Bennett=s alleged
statements C that his Aformaldehyde
docket@
consisted of Agood cases@ on which
Athere was
a lot of money to be made@ C are
nonactionable Apuffing@ or
expressions of opinion as to the value of these cases. See Transp. Ins. Co.
v. Faircloth, 898 S.W.2d 269,  276B77 (Tex.
1995) (holding that alleged fraudulent misrepresentations regarding the value
of an unliquidated tort claim were not actionable as a matter of law because
they were nonactionable expressions of opinion); Prudential Ins. Co. of Am.
v. Jefferson Associates, Ltd., 896 S.W.2d 156, 163 (Tex. 1995) (holding
that statements that building was Asuperb,@ Asuper
fine,@ and Aone of
the finest little properties in the City of Austin@ were not
actionable misrepresentations but merely Apuffing@ or
opinion); Allied Vista, Inc., 987 S.W.2d at 141 (stating that misstatement of
existing fact is required for negligent-misrepresentation liability).  Therefore, we hold that, under the applicable
standard of review, there is no evidence that the third alleged
misrepresentation is actionable.  








Furthermore, even if this alleged
misrepresentation were actionable, we conclude that there is no evidence that
Cochran justifiably relied on it in making his initial capital
contribution.  Although there is some
evidence Cochran relied on this alleged misrepresentation, we find no evidence
that his reliance was justifiable. 
Cochran testified that he has been practicing law since 1960.  Under the applicable standard of review,
Bennett did not tell Cochran one way or the other whether Cochran would be able
to examine any documents relating to Bennett, Krenek & Hilder, L.L.P.
before becoming a partner with Bennett; however, Cochran never asked to review
any such records and never asked for any documents about the firm.  Under these circumstances, we hold that there
is no evidence that Cochran=s
reliance on general statements by Bennett that the Aformaldehyde
cases@ were Agood
cases@ and that
Athere was
a lot of money to be made on these cases@ was
justifiable.  See Beal Bank, S.S.B. v.
Schleider, 124 S.W.3d 640, 651B52 (Tex.
App.CHouston
[14th Dist.] 2003, no pet. h.) (holding that, under the circumstances of the
case, there was no evidence of justifiable reliance by the plaintiff, an
experienced businessperson); Bluebonnet Sav. Bank, F.S.B., 907 S.W.2d at
909 (holding
there was no evidence of justifiable reliance by a reasonable
businessperson).  

We conclude there is no evidence to support the
jury=s finding
that Bennett was liable for negligent misrepresentation.  Accordingly, we sustain Bennett=s third
issue, modify the trial court=s
judgment to delete the award to Cochran based on his
negligent-misrepresentation claim (i.e., $50,000 in damages plus prejudgment
and postjudgment interest) and to order that Bennett recover from Cochran
$5,000 in damages plus prejudgment and postjudgment interest.[7]  As modified, we affirm the trial court=s
judgment. 

C.        Do the 2003 amendments
to section 304.003(c) of the Texas Finance Code apply?








The parties disagree over whether the 2003
amendments to section 304.003(c) of the Texas Finance Code apply to this
case.  See Act of June 2, 2003,
78th Leg., R.S., ch. 676, '  1, 2003 Tex. Gen. Laws 2096, 2096B97
(current version at Tex. Fin. Code '  304.003(c)). 
Cochran asserts that the amendments do apply and that both the
prejudgment and postjudgment interest rates should be modified to five percent.

The trial court signed its judgment on May 26,
2000, and Bennett filed his notice of appeal on August 23, 2000.  Almost three years later, the 78th
Legislature amended the Texas Finance Code to change the method by which the
postjudgment interest rate is calculated. 
Based on the recent level of interest rates, these amendments have the
effect of lowering the postjudgment interest rate from ten percent to five
percent.  The amendments Aapply in
a case in which a final judgment is signed or subject to appeal on or after the
effective date of this Act.@ 2003
Tex. Gen. Laws at 2097.  The effective
date of this act was June 20, 2003.  Id. 

Cochran asserts the new postjudgment interest rate
should apply because this appeal was pending in this court when these
amendments became effective.  Cochran
also argues that, because the prejudgment interest rate in this case is equal
to the postjudgment interest rate applicable at the time of judgment, the
prejudgment interest rate should also be changed to five percent.  See Tex.
Fin. Code ' 304.103
(stating that, for personal-injury cases, A[t]he
prejudgment interest rate is equal to the postjudgment interest rate applicable
at the time of judgment@).  

In construing a statute, our objective is to
determine and give effect to the legislature=s
intent.  See Nat=l Liab.
& Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex.
2000).  If possible, we must ascertain
that intent from the language the legislature used in the statute and not look
to extraneous matters for an intent the statute does not state.  Id. 
If the meaning of the statutory language is unambiguous, we adopt the
interpretation supported by the plain meaning of the provision=s
words.  St. Luke=s
Episcopal Hosp. v. Agbor, 952 S.W.2d 503, 505 (Tex. 1997).  








Under the plain language of the statute, the
amendments to section 304.003(c) of the Texas Finance Code apply in a case in
which a final judgment is signed or subject to appeal on or after June 20,
2003.  The plain meaning of the phrase Asubject
to appeal,@ when used to describe a
judgment, means that it is capable of being appealed.  See Columbia Med. Ctr.  of Las Colinas, Inc. v. Hogue, C S.W.3d C, C, 2004 WL
772423, at *12B13 (Tex. App.CDallas
Apr. 13, 2004, no pet h.); Cigna Healthcare of Tex., Inc. v. Pybas, 127
S.W.3d 400, 420B21 (Tex.
App.CDallas
2004), judgm=t vacated
w.r.m. 2004 WL 585008, at *1 (Tex. App.CDallas
Mar. 25, 2004) (mem. op.); Columbia Med. Ctr. of Las Colinas v. Bush,
122 S.W.3d 835, 865 (Tex. App.CFort
Worth 2003, pet. filed).  Thus, giving
the statutory language its plain meaning, the amendments to section 304.003(c)
of the Texas Finance Code apply to cases in which a judgment is signed on or
after June 20, 2003, and to cases in which a judgment becomes subject to
appeal, that is, capable of being appealed, on or after June 20, 2003.  See Pybas, 127 S.W.3d at 420B21;
Bush, 122 S.W.3d at 865B66.  We agree with our two sister courts of
appeals that have concluded the Asubject
to appeal@ language does not mean Apending
on appeal.@  See Hogue, C S.W.3d
at C, 2004 WL
772423, at *12B13; Pybas, 127 S.W.3d at
420B21;
Bush, 122 S.W.3d at 865B66.  

In this case, the trial court signed the final
judgment on May 26, 2000, and this judgment ceased being subject to appeal on
August 23, 2000, when Bennett filed his notice of appeal.  We hold that, because this appeal does not
involve a case in which a final judgment was signed or subject to appeal on or
after June 20, 2003, the interest rate for prejudgment and postjudgment
interest should remain at ten percent.  See
2003 Tex. Gen. Laws at 2097; Pybas, 127 S.W.3d at 420B21
(holding that amendments to section 304.003(c) of the Texas Finance Code did
not apply to case on appeal when the amendments became effective, in case in
which court of appeals affirmed the trial court=s
judgment as modified); Bush, 122 S.W.3d at 865B66
(holding amendments only apply to cases in which, on or after June 20, 2003, a
final judgment is signed or becomes capable of being appealed).

                                                             V.  Conclusion








The trial
court did not err in disregarding the jury=s answers
and rendering a take-nothing judgment against Bennett as to his
breach-of-contract claim because this claim failed as a matter of law.  Because there is no evidence to support the
jury=s finding
that Bennett is liable for negligent misrepresentation, we sustain Bennett=s third
issue, modify the trial court=s
judgment to delete the award to Cochran based on Cochran=s
negligent-misrepresentation claim (i.e., $50,000 in damages plus prejudgment
and postjudgment interest) and to order that Bennett recover from Cochran
$5,000 in damages plus prejudgment and postjudgment interest at the rate of ten
percent per year compounded annually.  As
modified, we affirm the trial court=s
judgment. 

 

 

/s/        Kem Thompson Frost

Justice

 

Judgment
rendered and Substitute Opinion filed April 22, 2004.

Panel
consists of Justices Anderson, Hudson, and Frost.

 

 











[1]  The record
indicates that the name of the partnership was initially Bennett, Cochran &
Krenek, L.L.P. and that the name was later changed to Bennett Cochran, L.L.P.;
however, this name change is not relevant to the issues on appeal.





[2]  In examining
whether there is no evidence to support this jury finding, we presume that the
partial reporter=s record designated by the parties constitutes the
entire record for the purposes of reviewing the issues presented.  See Tex.
R. App. P. 34.6(c); Bennett, 96 S.W.3d at 229.  





[3]  When
testifying as to what he understood his oral partnership agreement with Cochran
to be, Bennett stated: AAnd obviously that was not set down in writing.  Obviously that was not cleared up.  That was an issue of disagreement.  And obviously that was one of the reasons the
firm ultimately broke up.@  





[4]  The following
deposition testimony of Bennett was read to the jury: 

 

Q.         Did you finally come to an agreement regarding a formula
concerning the risk and reward for Bennett Cochran?  

A.         No, absolutely no.  

Q.         You never reached an agreement of a formula?  

A.         Never
a written agreement.





[5]  Because we
affirm the trial court=s ruling on this basis, we do not address the statute
of frauds issue.





[6]  In this
regard, we note that the jury found that Bennett did not commit fraud upon
Cochran.  In the jury charge, fraud was
defined as both intentional misrepresentation and fraudulent concealment, i.e.,
Awhen: (a) a party conceals or fails to disclose a
material fact within the knowledge of that party, (b) the party knows that the
other party is ignorant of the fact and does not have an equal opportunity to
discover the truth; [sic] (c) the party intends to induce the other party to
take some action by concealing or failing to disclose the fact, and (d) the
other party suffers injury as a result of acting without knowledge of the
undisclosed fact.@  Cochran has
not challenged these findings.  





[7]  Although
Cochran has not appealed the $5,000 award to Bennett based on Bennett=s assault claim, the trial court=s judgment credits this award against the
negligent-misrepresentation award in favor of Cochran.  Therefore, to grant relief on the third
issue, we need to modify the trial court=s
judgment to award the assault damages directly rather than as an offset.