**Amos G. WELDER, III, Appellant,**

v.

**William O. GREEN, Jr., Appellee.**

No. 13–96–627–CV.

Court of Appeals of Texas,
Corpus Christi.

Dec. 10, 1998.

John F. Dietze, Rockport, James H. Robichaux, Matthews & Branscomb, Corpus Christi, Bill Green, Beeville, for Appellant.

Robert P. Houston, Cynthia T. Sheppard, Scott Kimball, III, Houston, Marek & Griffin, Victoria, Shirley Selz, Gary, Thomasson, Hall & Marks, Corpus Christi, Janna K. Whatley, Joseph & Whatley, Sinton, for Appellee.

Before Justices DORSEY, HINOJOSA, and RODRIGUEZ

## OPINION

DORSEY, Justice.

William O. Green and Amos G. Welder, III, the two partners of the Beeville accounting partnership, Green & Welder, sued each other over issues arising from the dissolution of that partnership. · It was a general partnership without a written agreement governing the rights of the partners. The principal issues in this appeal are whether the trial court correctly disregarded the jury's answer that Green violated his fiduciary duty to Welder and the resulting damages, and if Welder is entitled to recover the value of the loss of goodwill of the dissolved partnership. We affirm in part and reverse and render in part.

In 1985 Welder was hired as an associate with the public accounting firm of Millikin, Green & Company, a partnership operating in Beeville, Texas. Welder was invited to buy in as an equal partner in 1989, which he did upon payment of the sum of $180,000 to Millikin and Green. The three partners shared the profits of the firm equally, and the firm's name was changed to Millikin, Green & Welder. Millikin retired in 1991; Welder and Green agreed to buy him out over a five-year term. The name of the firm changed to Green & Welder. There was no written partnership agreement at any time relevant to these proceedings.

Green was the accountant and trustee for a major client of the firm, the Hughes Trust (the Trust). The Trust paid the firm an average of $80,000 in fees each year. From that fee, Green was paid, or paid himself, a trust management fee of $5,000 each year for 1992 and 1993. In December 1994 Green unilaterally increased his fee, characterizing $45,000 as management fees payable to himself rather than accounting fees payable to the partnership. In January 1995 Welder discovered Green's actions and strenuously objected to the decrease in accounting fees paid to the firm. Green immediately sought legal counsel and, on counsel's advice, promptly repaid $55,000 to the partnership, representing his management fees from the Trust of $10,000 for 1992 and 1993 and $45,-000 for 1994. Green gave Welder a check for $27,500 and told him the partnership was dissolved.

After an accounting of the firm's finances was prepared, Green offered Welder his one-half of the partnership's net value according to the accounting. Welder refused the offer, claiming Green owed him at least an additional $100,000 for the "goodwill" value of the partnership. Green disputed that any goodwill value was owed, and Welder brought suit.

Welder sued Green on the tort theories of fraud, breach of fiduciary duty, and breach of the duty of good faith and fair dealing, seeking both actual and exemplary damages. He also sued for an accounting to effect a division of the partnership assets and a declaratory judgment to determine his personal liability on the partnership debt owed to his former partner, James R. Millikin, seeking a declaration that he was not personally liable on that debt.

Green answered with the affirmative defenses of waiver and estoppel and sought a declaratory judgment to determine the rights and liabilities of the partnership regarding the debt to Millikin. He also sought a declaration of his rights and liabilities regarding the dissolution of the partnership. Welder brought Millikin into the lawsuit as a necessary party in his counterclaim against Green. Millikin[1] prayed for judgment against the partnership on a pre-existing debt, and against Welder and Green individually, and jointly and severally. All parties prayed for attorney's fees and costs. At the conclusion of the evidence, the trial court directed a verdict against Green and Welder, jointly and severally, for the $57,500 balance owing on the debt to Millikin. The parties stipulated that Welder was entitled to $17,623.63 as his interest in the undivided partnership property, other than goodwill. Over Green's objections, the trial court submitted questions to the jury on fraud, breach of fiduciary duty, punitive damages, goodwill value of the partnership, Welder's attorney's fees, and whether Green was the managing partner of the partnership. The court also submitted

---

1. Millikin is not a party to this appeal.

questions on Green's affirmative defense of waiver, his attorney's fees, and Millikin's attorney's fees.

The jury returned a verdict in favor of Welder. The trial court disregarded the jury's answers favorable to Welder on fraud and breach of fiduciary duty, and entered judgment for Welder against Green for $145,123.63, consisting of $127,500 for the goodwill of the partnership and $17,623.63 for undivided partnership assets other than goodwill, plus attorney's fees. The trial court entered judgment that Welder and Green pay one another's attorney's fees and that they split Millikin's attorney's fees. Court costs were assessed 75% against Green and 25% against Welder. With the exception of attorney's fees, judgments favoring Millikin are not at issue in this appeal.

## TORT CLAIMS

By his first two points, Welder complains the trial court erred in granting Green's motion to disregard the jury verdict favorable to Welder's fraud and breach of fiduciary duty claims. The jury found Green, as managing partner, breached his fiduciary duty to Welder and committed fraud against him. The jury awarded Welder $67,500 for past lost income, $135,000 for future lost income, $50,000 for mental anguish, and $145,000 for loss of the value of his interest in the partnership. Green challenged the verdict on four points, contending Welder produced no evidence of: damages resulting from Green's mischaracterization of the management fee; damages resulting from Green's "cherry picking" clients; compensable mental anguish; or fraud. The trial court disregarded the jury findings and granted Green's motion that Welder take nothing on his breach of fiduciary duty and fraud claims.

■ To uphold a trial court's judgment notwithstanding the verdict (j.n.o.v.), an appellate court must determine that no evidence supports the jury's findings. *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex.1990); *Williams v. Bennett*, 610 S.W.2d 144, 145 (Tex.1980). When reviewing a no evidence point, an appellate court is limited to reviewing only the evidence tending to support the jury's verdict and must disre-

gard all evidence to the contrary. *Mancorp*, 802 S.W.2d at 227; *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988) (*per curiam*). If more than a scintilla of evidence supports the jury finding, it must be upheld. *Garcia v. Insurance Co. of Pa.*, 751 S.W.2d 857, 858 (Tex.1988). Appellate courts must consider the evidence and inferences as they tend to support the verdict and not with a view toward supporting the judgment. *Mancorp*, 802 S.W.2d at 228. More than a scintilla of evidence exists if the record reveals some probative evidence to support the verdict, no matter how small. *Ellis County State Bank v. Keever*, 888 S.W.2d 790, 801 (Tex.1994). But a legal principle that prevents a party from prevailing on its claims may authorize a j.n.o.v. *Atlantic Richfield Co. v. Misty Prods., Inc.*, 820 S.W.2d 414, 420–21 (Tex.App.—Houston [14th Dist.] 1991, writ denied).

Welder based his tort claims on the premise that he suffered injury resulting from two tortuous acts at Green's hands: Green breached his fiduciary duty and committed fraud by his mis-characterization of fees due the partnership from the Trust and further breached his fiduciary duty by choosing the more lucrative accounts for himself and employees loyal to him, leaving less profitable accounts to Welder.

## FRAUD

■ The elements of fraud are: (1) a material misrepresentation, (2) which was false, (3) which was either known to be false when made or was asserted without knowledge of the truth, (4) which was intended to be acted upon, (5) which was relied upon, (6) and which caused injury. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex.1990); *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex.1977).

■ Welder's pleadings allege Green intended to breach his fiduciary duties at the time of Millikin's departure from the firm and misrepresented his intentions while inducing Welder to enter into an agreement to buy out Millikin's share of the partnership. Welder avers he would not have agreed to the enter into such an agreement with Milli-

kin absent Green's fraudulent misrepresentation. However, the record contains no evidence of such a misrepresentation by Green or knowledge by him of any false statements or statements made without knowledge of the truth. Nor is there any evidence Green failed to disclose facts for the purpose of inducing Welder to purchase Milliken's interest.

No evidence supported a jury finding of fraud, therefore the trial court did not err in disregarding that portion of the verdict.

## CONSTRUCTIVE FRAUD & BREACH OF FIDUCIARY DUTY

The charge submitted to the jury on the issue of fraud contained an instruction on constructive fraud. Though presented as separate grounds of recovery, in the context before us, constructive fraud and breach of fiduciary duty amount to identical causes of action. Both require the existence of some special relationship and a breach of the trust engendered by that relationship. See *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex.1964). We will consider them together.

■ Partners are charged with a fiduciary duty. *Bohatch v. Butler & Binion*, 977 S.W.2d 543, 544–45, 41 Tex. Sup.Ct. J. 308 (Tex.1998); *AIG Risk Mgmt., Inc. v. Motel 6 Operating L.P.*, 960 S.W.2d 301, 304 (Tex. App.—Corpus Christi 1997, no writ). The misappropriation by one partner for his own use the property of the partnership is constructive fraud. *Veale v. Rose*, 657 S.W.2d 834, 837 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). A fiduciary owes its principal a strict duty of good faith and candor, as well as the general duty of full disclosure respecting matters affecting the principal's interests; there is a general prohibition against the fiduciary's using the relationship to benefit his personal interest, except with the full knowledge and consent of the principal regarding all material facts. *Hawthorne v. Guenther*, 917 S.W.2d 924, 934 (Tex.App.—Beaumont 1996, writ denied); *see also Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 509 (Tex.1980); *Hruska v. First State Bank of Deanville*, 727 S.W.2d 732, 736 (Tex. App.—Houston [1st Dist.] 1987), *aff'd in part, rev'd in part on other grounds*, 747

S.W.2d 783 (Tex.1988). A partner is prohibited from using the advantage of his position to gain any benefit for himself at the expense of his partners and from placing himself in any position where his self-interest may conflict with his obligations. *Pickens v. Hope*, 764 S.W.2d 256, 267 (Tex.App.—San Antonio 1988, writ denied). Managing partners owe their partners the highest fiduciary duty recognized in the law. *Huffington v. Upchurch*, 532 S.W.2d 576, 579 (Tex.1976); *Hughes v. St. David's Support Corp.*, 944 S.W.2d 423, 425 (Tex.App.—Austin 1997). A managing partner has a duty to administer the partnership affairs solely for the benefit of the partnership and may not place himself in a position where it benefits him to violate this duty. *Hawthorne*, 917 S.W.2d at 934; *McLendon v. McLendon*, 862 S.W.2d 662, 676 (Tex.App.—Dallas 1993, writ denied).

■ There is no dispute that Green re-characterized income to the partnership as his own, but the parties dispute whether this was done with Welder's knowing consent. Welder and Green both testified they discussed Green's intent to re-characterize the fees paid by the Trust as personal management fees payable to himself at the meeting on December 5, 1994. Both agree Welder expressed reservations to Green's plan. Welder testified that Green seemed vague and evasive about the amount of the re-characterization and that he was unaware that Green had paid himself $5,000 each year in 1992 and 1993 for managing the Trust. He also believed that, having expressed his dissatisfaction with the plan, Green would not proceed with the re-characterization. There was some evidence from which the jury could conclude that Green breached his fiduciary duty to Welder.

## DAMAGES

■ An essential element of any tort claim, however, is a showing of harm. If there was no evidence of recoverable damages flowing from those breaches of duty, the findings are immaterial, will not support a judgment, and were properly disregarded. *Eubanks v. Winn*, 420 S.W.2d 698, 701 (Tex. 1967); *Best v. Ryan Auto Group, Inc.*, 768 S.W.2d 956, 957 (Tex.App.—Fort Worth

1989), *rev'd on other grounds,* 786 S.W.2d 670 (Tex.1990).

■ Actual damages are limited to losses proximately caused by the defendant's wrongful conduct. *Trenholm v. Ratcliff,* 646 S.W.2d 927, 933 (Tex.1983). Welder claims the dissolution of the partnership was caused by Green's misconduct and, as a result of the dissolution, Welder suffered mental anguish, lost income, and loss of value in the partnership.

Green argues: (1) Green cured the only harm Welder complained of that was directly related to the fraud by prompt repayment of the monies; (2) Welder proved no other harm directly resulting from the mischaracterization; (3) Welder's other alleged injuries (lost past and future income, mental anguish, and loss of value in the partnership) stemmed from the dissolution of the partnership; (4) Green had an absolute right to dissolve the partnership at any time; and (5) tort damages cannot proceed from his exercise of that right.

The record reveals Green discussed the Trust management fee with Welder on December 5, 1994, and that he paid himself $45,000 by check on December 31, 1994. The partners had another meeting on January 23, 1995, following Welder's discovery of the recharacterization, during which Welder confronted Green over the fee. He also renewed his complaint regarding his deteriorating client base and the partners discussed the possibility of termination of the partnership, including possible buy-out terms. Two or three days later, Green returned $27,500 to Welder and stated his interest in dissolving the partnership. On January 31, the partners and their attorneys met to discuss the terms of the dissolution and, in fact, agreed to dissolve the partnership. On February 6 Welder received a letter demanding

he vacate the premises not later than February 8.[2]

Welder was without the use of his share of the Trust fee for less than one month. He does not complain of loss of use of the money. The record contains no evidence Welder suffered any injury directly resulting from Green's misappropriation of the Trust management fees.

Welder relied solely on evidence of damages resulting from the dissolution of the partnership. Because Welder introduced no evidence of any loss resulting directly from Green's misappropriation, to reverse the trial court's j.n.o.v., we must conclude the dissolution of the partnership was proximately caused by Green's wrongful acts. *Mancorp,* 802 S.W.2d at 227.

■ Dissolution of the partnership is governed by the Texas Uniform Partnership Act. TEX.REV.CIV. STAT. ANN. art. 6132b, § 38(1) (Vernon 1970). A partnership exists solely because the partners choose to place personal confidence and trust in one another. *Bohatch,* 977 S.W.2d at 546–47. A partner can be expelled, without a breach of duty, over disagreements about firm policy or to resolve some other fundamental schism. *Id.* The fiduciary duty partners owe one another does not encompass a duty to remain partners. *Id.*

■ Welder relies on language from the Houston Fourteenth Court of Appeals' disposition of *Bohatch,* in which that court recognized partners have a general fiduciary duty not to expel other partners from the partnership in bad faith, and defined bad faith to mean self-gain[3]. *Bohatch v. Butler & Binion,* 905 S.W.2d 597, 602 (Tex.App.— Houston [14th Dist.] 1995), *aff'd,* 977 S.W.2d 543, 545–46, 41 Tex. Sup.Ct. J. 308 (1998). Partners may be held liable under certain

---

**2.** Green and Millikin, not the partnership, were co-owners of the building in which the partnership operated.

**3.** We note the Houston court chose the term "self-gain" instead of "self-dealing." Self-dealing is a term of art and is always forbidden in a partnership/fiduciary relationship absent full disclosure of all material facts. The *Bohatch* court itself defined self-dealing as "accounting for all partnership profits and property." *Bohatch,* 905

S.W.2d at 602. Self-gain, on the other hand, has no technical meaning apart from plain meaning. It is easy to imagine circumstances in which self-gain equates to bad faith, as posited by the *Bohatch* court. However, perfectly sound and legally defensible business decisions will generally be based on some measure of self-gain. We cannot agree that self-gain indicates bad faith per se.

narrow circumstances for wrongfully excluding other partners from the benefits of the partnership. *See Omohundro v. Matthews,* 161 Tex. 367, 341 S.W.2d 401, 404 (1960) (partner in oil exploration partnership held liable for use of information obtained through partnership to profit at expense of partners); *Smith v. Bolin,* 153 Tex. 486, 271 S.W.2d 93, 96 (1954) (the use of information by one partner in an oil exploration partnership without compensation to partners was tortious); *Johnson v. Buck,* 540 S.W.2d 393, 399 (Tex.Civ.App.—Corpus Christi 1976, writ denied) (self-dealing and misrepresentation by one partner to another is fraud). The general rule is that a partner, absent agreement to the contrary, may dissolve the partnership at will, which includes those instances when it benefits the dissolving partner to do so. We hold self-gain as a motive in declaring a dissolution, without more, does not constitute bad faith or a breach of fiduciary duty.

▉ Either partner could, as a matter of law, dissolve the partnership at any time because there was no written partnership agreement providing otherwise. *See* Tex. Rev.Civ. Stat. Ann. art. 6132b, § 31(1)(b) (Vernon 1970). Damages arising from a legal dissolution, such as anticipated future income, mental anguish, and the like, are not recoverable. *See Bohatch,* 977 S.W.2d at 546–47; *Salinas v. Rafati,* 951 S.W.2d 483, 485 (Tex.App.—San Antonio 1994), *rev'd on other grounds,* 948 S.W.2d 286 (Tex.1997). However, damages that arise from the tortious activity and not from the dissolution of the partnership may be recovered.

▉ We have carefully reviewed the record and we find no evidence of Welder's mental anguish or pecuniary loss as a result of Green's changing the partnership's accounting fees into his management fees, although the activity could well be characterized as a breach of fiduciary duty.

### ASSIGNMENT OF ACCOUNTS

▉ Welder also maintains that Green breached his fiduciary duties by choosing the more lucrative client accounts for himself and employees loyal to him. His complaint is that Green, by assigning lucrative clients away from Welder prior to dissolution, caused him injury following dissolution when he was unable to develop a client base worth his half of the partnership profits.

Welder complains that, for a variety of reasons, he was unable to take many former clients. Although he claims clients for whom Green and partnership employees did accounting would not give him their business, the record reflects that each man was free to solicit any of the former partnership clients. Indeed, the evidence shows that clients likely remained with Green because they were not solicited by Welder. Welder opted to take client accounts worth approximately $80,000, leaving behind many of the accounts for which he had been responsible. The evidence reflects the partnership's clients made the ultimate choice over who handled the accounting. There is no evidence Green attempted to dissuade clients from using Welder; indeed the record shows new clients were directed to Welder. Further, Welder introduced no evidence that Green's assignment decisions, though not directly building Welder's client base, were not in the best interests of the partnership. On dissolution, each former partner was free to solicit all of the partnership clients for future business.

Welder complains he was unable to attract more clients because they were loyal to partnership employees or because he needed the employees to help with the larger accounts. Yet, he did not offer employment to any partnership employees. Moreover, there is no evidence the employees were other than at-will employees, and as such, they were not partnership assets. There is no evidence of damages resulting from an improper assignment of clients after dissolution or even that such assignment was possible.

As with the misappropriation claim, we find no evidence of any injury unrelated to the partnership's termination. We overrule Welder's first two points of error.

### THE VALUE OF GOODWILL

By two related points of error, Green challenges the award to Welder for his share of the dissolved partnership attributable to the goodwill of the partnership. In his first point, he claims the court erred in submitting

the question asking about goodwill because a professional partnership does not have goodwill as a matter of law. In his second point, he challenges the legal and factual sufficiency of the evidence supporting the jury's answer awarding Welder $127,500 for his share of the goodwill of the dissolved professional partnership.

When we review a legal sufficiency point of error, we consider all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 286 (Tex.1998); *Harbin v. Seale*, 461 S.W.2d 591, 592 (Tex.1970); *see also Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 24 (Tex.1994) ("The evidence presented, viewed in the light most favorable to the prevailing party, must be such as to permit the logical inference [that the jury must reach]."). We are required to determine whether the evidence as a whole rises to the level that would enable reasonable and fairminded people to differ in their conclusions. *Moriel*, 879 S.W.2d at 25.

There are two difficulties with ascribing goodwill to the professional partnership of Green & Welder as an asset to be evaluated and divided when the partnership dissolved: it was composed of professionals, and it was a partnership.

In *Nail v. Nail*, 486 S.W.2d 761, 763–64 (Tex.1972), the supreme court held that the goodwill that attaches to a professional practice is not an asset of the community estate that can be divided at divorce. The accrued goodwill of Dr. Nail in his medical practice did not constitute an asset separate and apart from his person, or from his individual ability to practice his profession. It would be extinguished by death, retirement, or disablement. However, the supreme court in *Nail* expressly stated that the ruling does not address goodwill as an asset incident to the sale of a professional practice, or "that may exist in a professional partnership." *Id.* at 764.

In later decisions, the courts have interpreted *Nail* to mean that to be an asset of the marital estate to be evaluated and divided at divorce, the goodwill of a professional must exist independently of the professional's skills. *Guzman v. Guzman*, 827 S.W.2d 445 (Tex.App.—Corpus Christi, 1992), *writ dism'd, improvidently granted*, 843 S.W.2d 486 (Tex.1992). Professional goodwill has been defined as that which attaches to the person as a result of the clients' confidence in professional skill or ability, does not possess value separate from the professional, and is extinguished by death, retirement, or disability. *Rathmell v. Morrison*, 732 S.W.2d 6, 17 (Tex.App.—Houston [14th Dist.] 1987, no writ).

Although it has been said that the goodwill that accompanies a professional practice is conceptually different from the goodwill that attaches to a trade or business, *see Keith v. Keith*, 763 S.W.2d 950, 952 (Tex.App.—Fort Worth 1989, no writ), the tests that are to be applied to determine goodwill when a partnership is dissolved are the same whether it is a professional partnership or one engaging in trade or business—that is, whether there is anything of value other than the skills of the individual partners. The supreme court stated in *Salinas*, addressing a professional partnership of physicians, "[t]o the extent that the valuation of the dissolved partnership was based on the goodwill attributable to the personal skills and talents of the former partners, it improperly took into account intangibles that were not partnership assets." *Salinas*, 948 S.W.2d at 290. There may be goodwill in a professional partnership that is separate from the skills or attributes of an individual partner, just as a mercantile partnership can have goodwill beyond the individual contributions or the partners. In *Rice v. Angell*, 73 Tex. 350, 11 S.W. 338 (1889), the supreme court discussed goodwill when a partnership is dissolved and one or more of the former partners continues to engage in the same type of business. The court said that some businesses are of such a nature that their particular location is of no consequence to its patrons. *Id.* at 340. It concluded that goodwill will survive when it is attached to a well established name, such as "The Galveston Insurance Agency" or location, such as the corner store. *Id.* In each of these instances, there is a valued continuity

regardless of ownership, which indeed is probably not important to customers.

Similarly, in *Taormina v. Culicchia*, 355 S.W.2d 569, 573–74 (Tex.Civ.App.—El Paso 1962, writ ref'd n.r.e.), the court held that goodwill could exist when former partners continued business in the same place with the same name and continued use of trademarks and brands in the canning business after the dissolution of the partnership. The courts have been careful to distinguish situations in which the partnership had a generally recognized name, that would lead patrons to do business with any person or firm using that name, from a partnership name that was not generally recognized, composed of the names of the former partners. *Salinas*, 948 S.W.2d at 290; *Rice*, 11 S.W. at 340.

■ The issue here is whether there was goodwill attributable to Welder's former partnership separate and apart from the skills, personalities, and attributes of the accountants themselves and whether such goodwill survived the dissolution.

The evidence shows the partnership Welder & Green claim lineage to was some fifty years old. Many partners had come and gone over the years, sometimes resulting in a change in the name of the partnership; sometimes not. Given no evidence of any written partnership agreement in the history of the firm, and the propensity of the partners to rename the partnership with each change, we are compelled to wonder whether the partnership maintained even the hypothetical continuity attributed to the anecdotal "Grandfather's Axe,"[4] which maintained at least its title, if not its component parts. When the partnership at issue dissolved, neither partner kept the former partnership name. Thus, no goodwill exists for the continued use of an established, well-recognized partnership name.

Green did remain in the old location—a building he co-owned with former partner, Millikin—and that may have value. However, Welder provided no evidence of clients who remained with Green, or of their value, based solely on Green's continued use of the old location. The record is replete with references to the valuation practices employed by accountants in determining "goodwill", a term encompassing all intangible value associated with a business. Specifically, Welder introduced evidence of how the various precursor partnerships determined the value owed to a departing partner or due from new partners buying their way into the accountancy. Nowhere, however, does the record contain evidence that would permit the jury to distinguish between the value of goodwill associated with the individual partners and the partnership. Welder contends the construction of the jury question itself required the jury to exclude goodwill attributable to the individual partners.[5] While this is true, the record contains no evidence that would permit the jury to perform this calculation.

Although Green continued his business at the same location, there is not a scintilla of evidence showing or tending to show that any goodwill attached to his business was attributable to its location. The trial court erred by entering a judgment for goodwill value favoring Welder. We overrule Green's first cross-point and sustain his second.

## PREJUDGMENT INTEREST

The third point of error raised by Welder alleges the trial court erred in failing to award him prejudgment interest on his recovery. Welder relies on article 6132b, § 42 and article 5069–1.05 of the revised civil statutes to support his allegations.

■ Welder's reliance is misplaced. Article 6132b, § 42 is applicable when a partner retires or dies, and the business is continued. TEX.REV.CIV. STAT. ANN. art. 6132b, § 42

---

4. The folktale of Grandfather's Axe describes the loving care afforded the venerable axe passed down from fathers to sons, bringing to mind fond remembrances of Grandfather, even though the axe head and handle had been replaced numerous times over the years, leaving none of the present-day axe original to that first axe handed down by Grandfather.

5. Question No. 1: What amount of money, if any, does William O. Green owe Amos G. Welder for "goodwill", if any, of the partnership of Millikin, Green and Welder? In answering this question, you are not to consider any value attributable to the personal good will [sic] of the partners. . . .

(Vernon 1970). Neither situation was presented in this case.

■ Article 5069–1.05, provides for prejudgment interest in wrongful death, personal injury, and property damage cases. Act of June 3, 1987, 70th Leg., 1st C.S., ch. 3, § 1, 1987 TEX. GEN. LAWS 99 (repealed 1997).[6] Property damage under this statute has been defined to mean damage to tangible property. *Spangler v. Jones,* 861 S.W.2d 392, 398 (Tex.App.—Dallas 1993, writ denied). As Welder received no damages for personal injuries or for damage to tangible property, he is not entitled to prejudgment interest under this article. We overrule Welder's third point of error.

## ATTORNEY'S FEES

Welder's fourth point of error asserts the trial court erred in awarding Green attorney's fees. By his third, fourth, and fifth cross-points, Green contends the trial court erred in ordering him to pay half of Millikin's attorney's fees and all of Welder's attorney's fees and appellate attorney's fees awarded as the result of the declaratory judgment action.

■ The Declaratory Judgments Act provides that in any proceeding under the Act "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). The statute thus affords the trial court discretion in deciding whether to award attorney fees. *Commissioners Court v. Agan,* 940 S.W.2d 77, 81 (Tex.1997); *Barshop v. Medina County Underground Water Conservation Dist.,* 925 S.W.2d 618, 637–38 (Tex.1996). The Act imposes four limitations on the court's discretion. The fees must be reasonable and necessary; these are fact questions left to the jury's determination. *Stewart Title Guar. Co. v. Aiello,* 941 S.W.2d 68, 73 (Tex.1997) (reasonableness is a fact question); *General Motors Corp. v. Bloyed,* 916 S.W.2d 949, 961 (Tex.1996) (necessity is a fact question). The Act also imposes the requirements that attorney fee awards must be equitable and just. Matters of equity are addressed to the trial court's discretion. *Knebel v. Capital Nat'l*

6. Current version at TEX. FIN.CODE ANN. § 304.102

*Bank,* 518 S.W.2d 795, 799 (Tex.1974); *Craddock v. Sunshine Bus Lines, Inc.,* 134 Tex. 388, 133 S.W.2d 124, 126 (Tex.1939). So is the responsibility for just decisions. *Murff v. Murff,* 615 S.W.2d 696, 699–700 (Tex.1981); *Carle v. Carle,* 149 Tex. 469, 234 S.W.2d 1002, 1005 (Tex.1950).

■ We can reverse the trial court's decision only if the complaining party shows a clear abuse of discretion. *Oake v. Collin County,* 692 S.W.2d 454 (Tex.1985). It is an abuse of discretion for a trial court to rule arbitrarily, unreasonably, or without regard to guiding legal principles, *Goode v. Shoukfeh,* 943 S.W.2d 441, 446 (Tex.1997), or to rule without supporting evidence, *Beaumont Bank v. Buller,* 806 S.W.2d 223, 226 (Tex. 1991). Therefore, in reviewing an attorney fee award under the Act, we must determine whether the trial court abused its discretion by awarding fees when there was insufficient evidence that the fees were reasonable and necessary, or when the award was inequitable or unjust.

■ Green sought a declaration of the rights and liabilities of the partnership regarding the outstanding debt to Millikin. He also sought a declaration regarding his rights and liabilities arising from the dissolution of the partnership. Welder sought declarations regarding his rights and liabilities resulting from the dissolution and also regarding the joint and several nature of his liability to Millikin. All three parties were interested in the resolution of these declarations. The trial court declared: (1) the partnership owed Millikin $57,500, (2) Welder and Green were each individually jointly and severally liable on this debt, and (3) that Welder and Green were indemnitors on the debt.

Assuming, *arguendo,* that each party properly preserved its issues, in the present case, we find nothing to indicate that the district court's attorney fee award was unjust or inequitable, and there was some evidence to support the conclusion that they were reasonable and necessary. We overrule these points and cross-points.

(Vernon 1998).

## COSTS

Welder's fifth point of error complains the trial court erred in failing to award him his taxable costs, as the prevailing party. In light of our disposition of this case, Welder cannot be considered the prevailing party and need not be awarded his costs. Tex.R. Civ. P. 131. We overrule Welder's fifth point of error.

## CONCLUSION

We REVERSE the trial court's judgment awarding goodwill value to Welder and RENDER that Welder take nothing in that regard. We AFFIRM the remainder of the judgment.