NO. 07-08-0219-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JULY 8, 2009

_____

MIKE LEWIS AND GERI KINCANNON, APPELLANTS

V.

XIUM CORPORATION AND GREG A. DOCKERY, APPELLEES

_____

FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;

NO. 94,013-B; HONORABLE JOHN B. BOARD, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellants, Mike Lewis and Geri Kincannon, appeal from a judgment rendered in

favor of Appellees, Xium Corporation and Greg A. Dockery (Xium),[1] during a bench trial of

---

[1]For convenience, we will refer to Xium and Dockery as "Xium" except, in instances, where a reference to Dockery clarifies the circumstances.

Lewis and Kincannon's action for breach of their investment contracts with Xium. Lewis and Kincannon assert the trial court erred by: (1) failing to order an accounting; (2) entering a directed verdict at the end of their case-in-chief; (3) denying their motion to supplement their pleadings; (4) denying their motion for discovery sanctions; (5) denying their motion for a modification of the Discovery Control Plan; (6) denying their post-trial motion for sanctions; (7) granting Xium's untimely objections to discovery; (8) permitting the admission of "royalty summaries" and amended "royalty summaries" into evidence; (9) permitting Xium to use documents at trial not produced in response to Lewis and Kincannon's discovery requests; and (10) misapplying the rules of civil procedure to a hearing on sanctions arising out of Xium's non-production of documents and abuse of the discovery process. Finding that the trial court erred by not ordering an accounting, we reverse the judgment of the trial court and remand for further proceedings in conformance with this opinion.

## Background

In their first Amended Petition filed January 26, 2006, Lewis and Kincannon alleged actions for violation(s) of the Texas Business Opportunity Act,[2] Securities Act,[3] Deceptive Trade Practices-Consumer Protection Act,[4] and they sought damages for fraud and

[2]§§ 41.001 *et seq.,* Tex. Bus. & Com. Code Ann. (Vernon 2002).

[3]Art. 581-1 *et seq.,* Tex. Rev. Civ. Stat. Ann. (Vernon Supp. 2008).

[4]§§ 17.41 *et seq.,* Tex. Bus. & Com. Code Ann. (Vernon Supp. 2008).

breach of contract, as well as seeking to pierce the corporate veil between Xium and its President, Dockery. Lewis and Kincannon alleged they invested money with Xium[5] in return for royalties from the sale of Xium products or other income, but received no money. The petition sought "an accounting of the expenditures, expenses and income of [Xium and Dockery] involved in the marketing of Spilateral technology[6] since the date of [Lewis and Kincannon's] initial investment upon which royalties would be computed." In addition, Lewis and Kincannon sought recovery of interest and attorney's fees.[7]

On July 21, 2006, Lewis and Kincannon filed traditional and "no-evidence" motions for summary judgment. On August 22, 2006, Xium and Dockery responded. With their response, they filed an affidavit by Dockery with attachments entitled "Royalty Summar[ies]."[8] The record does not indicate whether the trial court ever ruled on Lewis and Kincannon's motion for summary judgment.

---

[5]The petition alleged Lewis invested in excess of $75,000 while Kincannon invested in excess of $42,500.

[6]In their petition, Lewis and Kincannon alleged, in pertinent part, that Xium Corporation "represented that they had developed electronic technology referred to as 'Spilateral' technology which allowed end users the ability to transmit or receive better antenna reception by allowing signals to better resonate across a common carrier or airways."

[7]Xium originally failed to file an answer, or appear at trial, and the trial court entered a default judgment on March 10, 2006. However, on April 7, 2006, Xium filed their answer and moved for a new trial. On June 12, 2006, the trial court granted Xium's motion.

[8]The attachment consists of three pages, each entitled "Royalty Summary" printed on paper with a Xium letterhead. Each Royalty Summary lists sales of Spilateral technology that allegedly occurred from January 2, 2000 to August 1, 2006. Two Royalty Summaries indicate Lewis invested $50,000 on February 28, 2001, and $25,000 on July 28, 2000, yielding unpaid royalties due totaling $9,845.55. One Royalty Summary indicates Kincannon invested $22,500 on August 21, 2000, yielding unpaid royalties due totaling $1,514.70. Neither Dockery's affidavit nor the "Royalty Summaries" indicate who prepared the summaries or identified the underlying documents upon which the summaries were based.

3

## I. PreTrial Pleadings

On July 24, 2007, the trial court filed its pretrial order requiring discovery (including supplemental responses) to be completed by November 15, 2007, and pleadings to be filed by December 14, 2007. The order also set a trial date of February 19, 2008. On August 21, 2007, Lewis and Kincannon filed a motion to compel and for sanctions alleging Xium had failed to properly respond to their first request for production of documents.[9] On October 18, 2007, Xium produced a second set of documents.

On January 14, 2008, Xium filed an agreed motion to continue the trial date because the parties' depositions had not been conducted due to scheduling conflicts. The following day, the trial court denied that motion.

On February 1, 2008, Xium filed a motion for leave to file a "no evidence" motion for summary judgment and, on February 4, 2008, filed a motion for leave to file a traditional motion for summary judgment. Attached to the traditional motion for summary judgment was Dockery's affidavit and the purported "Royalty Summaries" originally filed in August 2006 in response to Lewis and Kincannon's traditional motion for summary judgment. On

---

[9]On August 28, 2006, Lewis and Kincannon served their first request for production of documents on Dockery and Xium. On October 20, 2006, Dockery and Xium filed their objections and response. Dockery objected to each request asserting "he was not a party to the lawsuit." Xium objected to each request asserting that the information sought was "confidential and proprietary," irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Nevertheless, Xium produced some documents subject to the objections and indicated that it was searching for other documents and would supplement.

4

February 15, 2008, Xium faxed an updated copy of the "Royalty Summaries" to Lewis and Kincannon indicating they intended to use the summaries at trial on February 19.

On February 11, 2008, Xium filed a second agreed motion for a continuance premised on the pending motions for summary judgment and they jointly sought to continue the trial until March 24. On February 13, Lewis and Kincannon filed a motion to strike Xium's special exceptions to their first amended petition and Xium's "no evidence" and traditional motions for summary judgment. Lewis and Kincannon also filed for leave to file a second amended petition and sought discovery sanctions under Rules 193.6 and 215 of the Texas Rules of Civil Procedure[10] based on Xium's failure to "fully and completely" respond to Lewis and Kincannon's request for production of documents. In support of their motion for discovery sanctions, Lewis and Kincannon asserted Xium wholly failed to respond to numerous, specific document requests or produced incomplete documents or documents for miscellaneous time periods. Lewis and Kincannon also sought a modification of the discovery plan pursuant to Rule 190.5.

On February 13, 2008, the trial court denied the second agreed motion for continuance.

---

[10]Hereafter, for convenience, citation to the Texas Rules of Civil Procedure will be as follows: "Rule ___."

## II.    Pretrial Hearing

Prior to trial on February 19, the trial court held a hearing and denied Lewis and Kincannon's motions.  The trial court denied a third agreed motion for a continuance and Xium withdrew its motions for summary judgment.

The trial court permitted Lewis and Kincannon to put on a bill of exception pertaining to the trial court's denial of their discovery motions.  In support of their bill, Lewis and Kincannon called Mark Kile, a certified public accountant, as a witness who had reviewed Lewis and Kincannon's request for production of documents and Xium's response.  Kile's review of Xium's response served October 18, 2007, was completed December 22, 2007.

In response to Lewis and Kincannon's request for production, Kile testified Xium produced some board minutes but the minutes were incomplete.  He testified that Xium produced no committee minutes, retirement plan information, or shareholder stock ledgers.  Although Xium produced general ledger documents spanning years 1999 through 2005, he testified the ledgers were in batch format, only a few miscellaneous months were included in the postings, the "total" column was not included in the documents produced, and there was no detail of any individual transactions.  In his opinion, the general ledger documents were incomplete, inadequate, and not representative of Xium's complete financial history.  Further, he testified the production of cash disbursement records was incomplete; only one accounts receivable aging report was produced; the accounts payable information was incomplete and meaningless; some sales reports were produced

6

for two years;[11] customer contact information was incomplete; there were no payroll ledgers, quarterly payroll reports, salary agreements, or employee contracts,[12] no employee benefit or compensation documents; corporate investment documents, property ownership documents; no loan, guarantee, outstanding commitment or asset pledge documents; corporate income tax returns; Form 1099's; interim financial statements;[13] income statements; detailed inventory records; depreciation schedules; invoice copies. Although some bank statements were produced, only the front page of the statements was produced.

Kile testified the "Royalty Summaries," attached to Xium's summary judgment pleadings, were encompassed by a specific request for production by Lewis and Kincannon but were not produced. He indicated that he had no means to verify the calculations in the "Royalty Summaries" because Xium had not produced the underlying sales and inventory information or documents. Based upon his review of the documents produced by Xium, he opined their entire production was "really meaningless . . . [i]t was like either somebody . . . incompetent put them together or they were intentionally trying to deceive the plaintiffs, but they were unresponsive to the request . . . [u]seless, just a pile of paper, general ledgers and tax returns not provided, or the underlying documents,

---

[11]Kile testified the sales reports were an important accounting document which could be used to calculate the royalties owed from units sold. He further testified that, under the royalty agreements, royalties were based on a percentage of sales–without the sales information, royalties cannot be calculated.

[12]Kile testified that, in most corporations, if there were no salary agreements, there would, at the least, be payroll records.

[13]There was one balance sheet for April 30, 2004 to May 31, 2004.

meaningless." Thereafter, without granting any further relief, the trial court commenced the bench trial.

### III.    Bench Trial

Kincannon was the first witness. He had known Dockery for approximately twenty years[14] when Dockery approached him about investing in his new corporation, Xium. Dockery represented Kincannon would triple a $10,000 investment in Xium in the first year.

On July 29, 1999, Kincannon agreed to invest $10,000 and entered into a Letter Agreement. In return for his investment, Kincannon was promised a royalty for each XM2000 unit sold by Xium not to exceed $30,000 or three hundred percent of his initial cash investment.[15] The Agreement further provided, in pertinent part, as follows:

> Xium will keep an accurate account of the product manufactured and sold, and shall render a statement of such business, in writing to you, within thirty (30) days after the end of each calendar quarter, and shall, concurrently, pay to you the full amount of royalty accrued during the calendar quarter.

At the end of the first year, Kincannon met with Dockery who represented that Kincannon had earned $30,000 in royalties during the first year. Dockery then displayed

---

[14]Kincannon and Lewis were personal friends of Dockery. Both had teenage sons who wrestled on the high school wrestling team with Dockery's son. Kincannon and Dockery often traveled together on weekend trips to attend their sons' out-of-town wrestling competitions.

[15]Specifically, Kincannon would "receive a royalty of $1.00 per XM2000 unit sold for the initial 10,000 pieces, $.50 per the next 20,000, $.25 per unit thereafter for units sold in consideration of advancing a cash sum equal to $10,000."

8

numerous kinds of wireless technology manufactured by Xium. He told Kincannon that he could apply Kincannon's $30,000 in royalty earnings toward ownership of a portion of Xium's business. Dockery showed Kincannon a chart entitled "Statistics & Projected Market Penetration." For each of twenty Xium products, the chart showed the projected units to be sold and the corresponding "pay zone" for an investor depending on the amount of their investment. The chart indicated that with a $25,000 investment, Kincannon would realize $590,559 from Xium's sales. Dockery represented this amount was the minimum amount Kincannon would earn if he invested. In return for his investment of $30,000, Kincannon understood he would receive three percent of Xium's sales. Kincannon agreed to purchase the three percent interest.

On August 11, 2000, Kincannon also executed a second Letter Agreement and contributed an additional $12,500 in return for a "royalty of $.10 per hardware unit sold using 'Spilateral' technology." This second Agreement contained the same accounting provision contained in the first Agreement.

In February 2001, after obtaining $50,000 from Lewis, Dockery changed his cell phone number and was unavailable. Although Kincannon attempted to obtain more information about his investment, Dockery ceased all communication with him. He was told Dockery was not in his office when Kincannon visited Xium's offices[16] and Dockery did not return his calls. Kincannon never received any accounting or royalties. Kincannon

---

[16]On one visit, he testified he observed Dockery in his office through a glass window after being told Dockery was not in his office.

testified that he would have never invested in Xium without the assurance of accurate accountings contained in the Letter Agreements. At the conclusion of his testimony, Kincannon moved for a trial amendment under Rule 66 to assert a claim for recision. Following a hearing, the trial court allowed the amendment seeking an alternative measure of damages in addition to royalties.

Lewis was the next witness. Lewis testified that he had known Dockery for three years when he invested in Xium. On July 27, 2000, he and his wife, Mary Lewis, entered into a Letter Agreement with Xium whereby they contributed $25,000 to Xium in return for a "royalty of $.20 per hardware unit sold using Spilateral technology." And, on February 28, 2001, they entered into a second Letter Agreement whereby they contributed an additional $50,000 in return for a royalty of $.045 per hardware unit sold using Spilateral technology. Both Letter Agreements contained the same accounting provision as the Kincannon agreements.

Prior to investing, Lewis was also given the same chart as Kincannon entitled "Statistics & Projected Market Penetration." He was also told that the increase in the value of his investment represented on the chart was a "low figure"– "what his minimum payout would be based on his royalties." The chart indicated that, based upon an investment of $75,000, his payout would be $2,140,776. He testified Dockery represented that the chart's figures were low and that the minimal amount he would make on his investment would be $2.14 million. Neither did Lewis receive any accounting or royalties. He testified

10

that, if he had known that Dockery was not going to give him the accounting to which he was entitled, he would not have invested the money. He also testified he could not say what royalty was due and owing to him because he had no information what that amount would be.

Lewis and Kincannon rested their case, Xium moved for a directed verdict on all causes of action, and the trial court granted that motion stating, in pertinent part, as follows:

> With regard to the breach of contract claims, I think there's some evidence to support a finding that the contract was breached by failure to give quarterly accountings and to pay quarterly royalties, and there is some evidence with respect to recision damages which would be the amounts paid by the Plaintiffs. But the Plaintiffs have the burden of proof to prove that an adequate remedy is not available at law, and there's simply no evidence to support such a finding. I have no evidence what damages, if any, was caused by the failure to give quarterly reports. I have no evidence to show what damage, if any, was caused by the failure to pay royalties. There's no evidence that any royalty was even due. And so based on that, I find that with regard to [Lewis and Kincannon] meeting their burden of proof on the contract – breach of contract allegations, they have failed to do so and [I] will grant judgment to the Defendant.

On February 28, 2008, Lewis and Kincannon filed a motion for sanctions and directed verdict or, alternatively, motion for a new trial. The trial court denied Lewis and Kincannon's motion and this appeal followed.

11

## Discussion

Lewis and Kincannon's points of error can be distilled to three issues. That is, (1) whether the trial court erred by failing to order an accounting at the conclusion of their evidence; (2) whether the trial court erred by directing a verdict in Xium's favor at the conclusion of their evidence; and (3) whether, in lieu of ordering further discovery or an accounting from Xium, the trial court erred by failing to sanction Xium for abusing the discovery process.

Xium asserts that Lewis and Kincannon were not entitled to an accounting because they did not request one in either their original or first amended petitions. Xium asserts the "Royalty Summaries" were an accounting. Xium also asserts a directed verdict was proper because Lewis and Kincannon failed to establish any damages and that the only evidence of any damages owing to Lewis and Kincannon, the "Royalty Summaries," were excluded at the prompting of Lewis and Kincannon . Finally, Xium cross moves for sanctions under Rule 45 of the Texas Rules of Appellate Procedure asserting that Lewis and Kincannon's appeal is "frivolous."

### I.      Standard of Review

A directed verdict is proper when the evidence conclusively establishes the right of the movant to judgment or negates the right of the opponent or when the evidence is insufficient to raise a material fact issue. *Prudential Ins. Co. of America v. Financial*

12

*Review Services, Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). *See Cotten v. Weatherford Bancshares*, Inc., 187 S.W.3d 687, 696 (Tex.App.–Fort Worth 2006, pet. denied). If the question to be decided is whether the losing party at trial raised a material fact issue, we consider all the evidence in a light most favorable to the party against whom the verdict was instructed and disregard all the contrary evidence and inferences; we give the losing party the benefit of all reasonable inferences created by the evidence. *Coastal Transport Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 234 (Tex. 2004). If we determine that any conflicting evidence of probative value raises a material fact issue on any theory of recovery, then the directed verdict is improper because such an issue is for the finder of fact to resolve. *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994).

## II.      Accounting

An accounting may be a particular remedy sought in conjunction with another cause of action or it may be a suit in equity.      *Michael v. Dyke*, 41 S.w.3d 746, 754 (Tex.App.–Corpus Christi 2001, no pet.)*.  See Sauceda v. Kerlin*, 164 S.W.3d 892, 928 (Tex.App.–Corpus Christi 2005), *reversed on other grounds,* 263 S.W.3d 920 (Tex. 2008). In a suit for an accounting, the general rule requires that the right to an accounting must first be determined and, if found, reference for an account should be ordered.[17] *Advertising*

---

[17]Whether to order a reference of the accounting to a third-party accountant or master is within the discretion of the trial court. *Shanklin v. Moseley*, 287 S.W. 121, 123 (Tex.Civ.App.–Dallas 1926, no writ) (questions fit for reference may be determined by the court itself "whenever it can conveniently do so with the saving of time and expense"). It is also within the discretion of the trial court to "properly tax the cost of an auditor's fee and all other costs against [a party] who keeps the books of the company in such a manner that the appointment of the auditor became necessary . . . and in arriving at an intelligent accounting between the

*and Policy Committee of the Avis Rent A Car System v. Avis Rent A Car System*, 780 S.W.2d 391, 400 (Tex.App.–Houston [14th Dist.] 1989), *vacated and rem'd due to settlement*, 796 S.W.2d 707 (Tex. 1990); *Ferguson v. Ferguson*, 327 S.W.2d 787, 789 (Tex.Civ.App.–Fort Worth 1959), *rev'd on other grounds*, 161 Tex. 184, 338 S.W.2d 945 (1960). Where relief is justified, a trial court's failure to order an accounting is cause for reversal. *Southwest Livestock & Trucking Co. v. Dooley*, 884 S.W.2d 805, 811 (Tex.App.–San Antonio 1994, writ denied).

Here, an accounting remedy was sought in connection with Lewis and Kincannon's claim for breach of their investment contracts. Lewis and Kincannon testified they did not receive any return under their contracts. Their contracts contained an express provision requiring periodic accounting by Xium and Xium provided no accounting. Thus, Lewis and Kincannon's evidence at trial established Xium had a contractual duty to provide Lewis and Kincannon with an accounting and Xium breached its duty.

An action for accounting may also be founded in equity; *T.R.W. Management, Inc. v. Westwood Shores Property Owners Ass'n*, 79 S.W.3d 712, 717 (Tex.App.–Houston [14th Dist.] 2002, pet. denied); *Southwest Livestock*, 884 S.W.2d at 810, where the decision

---

parties." *Navarro v. Lamana*, 179 S.W. 922, 923-24 (Tex.Civ.App.–El Paso 1915, writ ref'd) (where a party's improper conduct occasions the litigation and the necessity for appointing an auditor, the trial court did not improperly exercise its discretion in taxing all costs against him).

whether to grant the accounting is within the sound discretion of the trial court.[18] *Michael,* 41 S.W.3d at 754; *Southwest Livestock,* 884 S.W.2d at 810. Such a remedy is proper when the facts and accounts presented are so complex that adequate relief may not be obtained at law. *Hutchings v. Chevron U.S.A.,* 862 S.W.2d 752, 762 (Tex.App.–El Paso 1993, writ denied) (citing *Richardson v. First Nat'l Life Ins. Co.,* 419 S.W.2d 836, 838 (Tex. 1967). *See also Sauceda,* 164 S.W.3d at 928; *T.R.W.,* 79 S.W.3d at 717-718. When a party can obtain adequate relief at law through the use of standard discovery procedures, such as requests for production and interrogatories, a trial court does not err in not ordering an accounting. *T.F.W.,* 79 S.W.3d at 718.

Here, regular discovery practices proved inadequate to determine the amount of royalties, if any, that remained unpaid. Despite Lewis and Kincannon's detailed request for production of documents and subsequent motion to compel, the uncontroverted testimony of Lewis and Kincannon's accountant, Kile, showed Xium's production and supplemental production were "really meaningless" or "useless." Few, if any, of the requested documents were produced to Lewis and Kincannon, and those documents produced were either incomplete for the time period requested or incomplete in themselves. In addition, Xium objected to each investor request asserting the information sought was "confidential and proprietary." Under the circumstances, normal discovery procedures were inadequate.

---

[18]In matters of equity, a trial court abuses its discretion if it acts: (1) arbitrarily, unreasonably, or without regard to guiding legal principles; or (2) without supporting evidence. *Welder v. Green,* 985 S.W.2d 170, 180 (Tex.App.–Corpus Christi 1998, pet. denied).

Xium asserts Lewis and Kincannon were not entitled to the accounting remedy because they did not request an accounting in their original or first amended petitions. Xium's argument is baseless. In their first amended petition, Lewis and Kincannon sought "an accounting of the expenditures, expenses and income of [Xium and Dockery] involved in the marketing of 'Spilateral' technology since the date of [Lewis and Kincannon's] initial investment upon which royalties would be computed." Lewis and Kincannon's first amended petition sufficiently pled an action for accounting; *see Bly v. Harvey*, 397 S.W.2d 893, 895 (Tex.Civ.App.–Texarkana 1965, writ ref'd n.r.e.), and damages. *T-P Inv. Corp. v. Winter,* 400 S.W.2d 957, 959 (Tex.Civ.App.–Waco 1966, writ dism'd).

Xium next asserts that its "Royalty Summaries" were an accounting. An accounting is a "system of recording and summarizing business and financial transactions in books and analyzing, verifying and reporting the results." *New Jersey Bank (N.A.) V. Knuckley*, 637 S.W.2d 920, 921 (Tex. 1982).[19] Dockery's *ex parte* affidavit and attached "Royalty Summaries" were hearsay and, as such, wholly incompetent and without probative force.[20] *See Sammons Enterprises, Inc. v. Manley*, 540 S.W.2d 751, 757 (Tex.Civ.App.–Texarkana 1976, writ ref'd n.r.e.); *Ward v. National Benev. Soc.*, 155 S.W.2d 994, 996

---

[19]An accounting is also defined as a "record of debit and credit entries to cover transactions involving a particular item. . . ." Merriam Webster's Collegiate Dictionary 8 (11th ed. 2003). *See also* Black's Law Dictionary 18 (8th Ed. 2004).

[20]The "Royalty Summaries" were submitted to prove the truth of the matter asserted, i.e., the royalties due. Moreover, the record does not reflect who prepared the "Royalty Summaries" or contain any attempt to establish the accuracy of their contents. *See Perkins v. Springstun*, 557 S.W.2d 343, 345 (Tex.Civ.App.–Austin 1977, writ ref'd n.r.e.). Kile testified that Xium did not produce any documents to Lewis and Kincannon from which he could verify the calculations contained in the "Royalty Summaries."

(Tex.Civ.App.–Galveston 1941, no writ).  As such, the "Royalty Summaries" were not an accounting.

Xium's assertion that Lewis and Kincannon failed to prove their damages, and the trial court's judgment, assumes the proposition to be proven through an accounting, i.e., whether Lewis and Kincannon are entitled to any return.  In the absence of adequate discovery or a verified accounting, Lewis and Kincannon were unable to prove their damages; *see generally Winter*, 400 S.W.2d at 959 ("[t]he very nature of the prayer for accounting [makes] it unnecessary for plaintiff to allege a certain and specific amount of damages or sum due"), because Xium controls all the necessary information.  Lewis and Kincannon's evidence shows that, based upon their long-standing personal relationships, Dockery proposed the sale of the royalties while representing that Lewis and Kincannon would reap substantial profits, promised accountings, supervised the sale of the technology, collected the money, and made all the expenditures.  Lewis and Kincannon, on the other hand, were more akin to silent partners.  They had no voice in the enterprise and knew nothing of the financial status or details of Xium's Spilateral business enterprise.  As such, absent adequate disclosure or an accounting, Xium held, and continues to hold, the exclusive power to establish whether there were no profits from the sale of its Spilateral technology.

We find the directed verdict was improper because Lewis and Kincannon produced evidence Xium had a contractual duty to provide an accounting and breached that duty.

17

Moreover, regular discovery practices have proven inadequate. Despite their submission of detailed document requests, Lewis and Kincannon have yet to obtain sufficient information to determine whether there were profits from the sale of Xium's Spilateral technology and royalties due. Under the standards thus established, we conclude the trial court erred and/or abused its discretion by denying the imposition of an accounting. *See Sauceda*, 164 S.W.3d at 928.

We sustain Lewis and Kincannon's first and second points of error. The remaining points of error are pretermitted; *see* Tex. R. App. P. 47.1, and Xium's cross-point for sanctions is denied.

**CONCLUSION**

The trial court's judgment is reversed and remanded for further proceedings consistent with this opinion.

Patrick A. Pirtle
Justice